UNITED STATES of America, Appellee,

v.

Vincent Lloyd CAMPBELL, aka Elijah Wilson, Defendant–Appellant.

Docket No. 98–1309.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1998.

Decided Jan. 29, 1999.

Lawrence, Assistant United States Attorney, New York, New York, on the brief), for Appellee.

Clinton W. Calhoun Iii, Briccetti & Calhoun, New York, New York, for Defendant–Appellant.

Before: KEARSE, STRAUB, and SOTOMAYOR, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Vincent Lloyd Campbell appeals from a judgment of the United States District Court for the Southern District of New York, Barbara S. Jones, *Judge,* convicting him, following his plea of guilty, of illegal postdeportation reentry into the United States, in violation of 8 U.S.C. § 1326 (1994), and sentencing him principally to 41 months' imprisonment, to be followed by a two-year term of supervised release. On appeal, Campbell contends principally that, in calculating his sentence, the district court erred in increasing his offense level by 16 steps pursuant to § 2L1.2(b)(2) of the Sentencing Guidelines (1995) ("Guidelines") (*renumbered* § 2L1.2(b)(1)(A) in the 1997 version of the Guidelines). That subsection pertains to defendants convicted of an "aggravated felony" prior to deportation; Campbell contends principally that the subsection was misapplied to him because the state-court aggravated-felony conviction on which his enhancement was based had been vacated. Finding no merit in any of Campbell's contentions on appeal, we affirm.

## BACKGROUND

There is no dispute as to the pertinent facts. Campbell, a citizen of Jamaica, entered the United States lawfully on a visitor's visa in 1977 but overstayed his visa. In 1987 he was convicted in New York State court of criminal possession of cocaine, as a result of which the Immigration and Naturalization Service ("INS") initiated deportation proceedings against him. Campbell was deported on October 24, 1989.

While the deportation proceedings were pending, Campbell was convicted of numerous offenses in New York and Texas. Of

William C. Silverman, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Kerry A.

particular significance here, Campbell was convicted in a Texas state court on October 4, 1989, following his plea of guilty, of the felony of possession of a controlled substance ("1989 Texas conviction"). The Texas court sentenced him to seven years' imprisonment, suspended the prison sentence, and imposed a five-year period of probation. In October 1994, the five-year period having ended, the Texas court set aside Campbell's conviction on the ground "that the period of probation ... ha[d] expired, and that all conditions of probation ha[d] been satisfactorily fulfilled." (Order Setting Aside Judgment of Conviction dated October 3, 1994 ("1994 Texas Order").) That order stated that Campbell was thereby "released from all penalties and disabilities resulting from" the conviction. (*Id.*)

In the meantime, in 1991 or 1992, Campbell had reentered the United States without receiving the permission of the Attorney General to do so. He was subsequently arrested on state-law charges and was incarcerated at the Ulster County Correctional Facility in New York. In October 1994, during a routine INS screening of inmates at that facility, the INS discovered that Campbell had reentered the country. Accordingly, after his release from state custody in 1996, Campbell was arrested by INS agents and indicted on one count of violating 8 U.S.C. § 1326 by reentering, or attempting to reenter or being found in, the United States without the permission of the Attorney General "after having been ... deported from the United States subsequent to his conviction for the commission of an aggravated felony, to wit, unlawful possession of a controlled substance." Campbell pleaded guilty.

Under Guidelines § 2L1.2(a), the base offense level for Campbell's offense was 8. The government sought a 16-step increase pursuant to § 2L1.2(b)(2), however, which applied to a defendant convicted of committing a § 1326 offense after being deported subsequent to his conviction of an aggravated felony. For purposes of this enhancement, an "aggravated felony" is defined to include illicit trafficking in narcotics. *See id.* § 2L1.2 Application Note 7. Campbell objected to the use of his 1989 Texas conviction as the basis

for this enhancement, arguing principally that the conviction had been vacated.

The district judge rejected his objection. She reasoned that the meaning of the term "conviction" is a matter of federal law and that the 1989 Texas conviction had been set aside solely because of Campbell's completion of the probation sentence, not because of any legal insufficiency in the conviction. The court saw no indication, either in the Guidelines or in the statutory provisions for enhanced penalties, *see* 8 U.S.C. § 1326(b), of any intention to foreclose consideration of a prior conviction that "was vacated solely because the defendant completed his probation." (Sentencing Transcript, May 20, 1998, at 6.) Concluding that the 16-step enhancement was proper, the court sentenced Campbell as indicated above.

Judgment was entered, and this appeal followed.

## DISCUSSION

On appeal, Campbell principally pursues his contention that his vacated 1989 Texas conviction could not provide the predicate for the 16-step enhancement provided in Guidelines § 2L1.2(b)(2). He also contends that the rule of lenity should prevent application of the enhancement to him. We reject both contentions.

■ Section 1326(a) of Title 8 makes it unlawful for a person who has been deported from the United States to reenter the United States without permission of the Attorney General of the United States. The severity of the penalties for violating that section varies according to the defendant's criminal record. A defendant who violates § 1326(a) after having been deported subsequent to his conviction of an aggravated felony is subject to imprisonment for up to 20 years. *See* 8 U.S.C. § 1326(b)(2). *Compare id. with* 8 U.S.C. § 1326(a) (up to 2 years for a defendant with no prior record) *and id.* § 1326(b)(1) (up to 10 years for a defendant with one prior felony but not an aggravated felony). Accordingly, the Guidelines provide that a § 1326 defendant's offense level is to be increased by 16 steps if the defendant was deported after a conviction for an aggravated

felony. *See* Guidelines § 2L1.2(b)(2). The question raised by this appeal is whether a conviction in state court that was later vacated by that court constitutes a "conviction" within the meaning of these federal provisions.

█ In general, it is presumed that "when Congress enacts a statute[,] . . . it does not intend to make its application dependent on state law." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (internal quotation marks omitted). Thus, the matter of "[w]hether one has been 'convicted' within the language of [federal] statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State." *Id.* at 111–12, 103 S.Ct. 986.

In *Dickerson*, the Supreme Court considered the meaning of 18 U.S.C. § 922(g) and (h), which prohibit the shipment, transport, or receipt of firearms or ammunition in interstate commerce by a person " 'who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year.' " 460 U.S. at 105, 103 S.Ct. 986 (quoting statute). An officer of the respondent in the *Dickerson* case had pleaded guilty in an Iowa state court to carrying a concealed handgun, an offense punishable by imprisonment for up to five years. Pursuant to a state statutory scheme, the Iowa court had "deferred" entry of a formal judgment and placed him on probation; following the completion of his probationary term he was discharged, and his record with respect to the deferred judgment was then expunged. The United States Supreme Court held that the expunction did not nullify the respondent's conviction for purposes of §§ 922(g) and (h), given that a state-law expunction, as contrasted with a reversal or vacatur on direct appeal, "does not alter the historical fact of the conviction." *Dickerson*, 460 U.S. at 115, 103 S.Ct. 986. The Court explained that

> expunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty. Expunction in Iowa means no more than that the State has provided a means for the trial

court not to accord a conviction certain continuing effects under state law.

*Id.* The Court concluded that the expunged Iowa conviction remained a conviction for purposes of the federal firearms statute.

It is, of course, open to Congress to make state-law definitions applicable to federal statutes, and in the wake of *Dickerson*, Congress added language to 18 U.S.C. § 921(a)(20), expressly giving controlling effect to state-law characterizations of what constitutes a "conviction" for purposes of the firearms statute, *see* Firearms Owners' Protection Act, Pub.L. No. 99–308, § 101(5), 100 Stat. 449, 450 (1986). *See, e.g., McGrath v. United States*, 60 F.3d 1005, 1009 (2d Cir. 1995) ("[s]ection 921(a)(20) was expressly crafted to overrule *Dickerson*'s federalization of a [state] felon's status"), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996). The added language states that, as used in the firearms chapter, "[w]hat constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held," 18 U.S.C. § 921(a)(20) (1994); and it provides that unless a state order granting relief from the conviction imposes restraints on the defendant's firearm possession, transport, receipt, etc., the term conviction does not include "[a]ny conviction which has been expunged[ ] or set aside," *id.* The *Dickerson* opinion "still stands," however, "for the general proposition that federal law governs the application of Congressional statutes in the absence of . . . plain language to the contrary." *Yanez–Popp v. INS*, 998 F.2d 231, 236 (4th Cir.1993); *see also United States v. Cuevas*, 75 F.3d 778, 782 (1st Cir.1996); *United States v. McAllister*, 29 F.3d 1180, 1184–85 (7th Cir.1994).

The immigration laws contain no provision similar to 18 U.S.C. § 921(a)(20), nor any other indication that they are to be interpreted in accordance with state law. *See, e.g., United States v. Cuevas*, 75 F.3d at 782 ("Congress has not made the same choice with respect to the immigration laws"); *Wilson v. INS*, 43 F.3d 211, 213–16 (5th Cir.) (per curiam), *cert. denied*, 516 U.S. 811, 116 S.Ct. 59, 133 L.Ed.2d 23 (1995); *Yanez–Popp v. INS*, 998 F.2d at 234–36. The immigration

statute defines "conviction," with respect to an alien, as either (1) a "formal judgment of guilt," or (2) a "judge['s] order[ that] some form of punishment, penalty, or restraint on the alien's liberty ... be imposed" following (a) a finding of guilt by "a judge or jury," or (b) the alien's "plea of guilty or nolo contendere," or (c) the alien's "admi[ssion of] sufficient facts to warrant a finding of guilt." 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996). No pertinent provision in Title 8 gives controlling effect to state law. And no provision excepts from this definition a conviction that has been vacated.

Nor does any Guidelines provision exclude from § 2L1.2 the consideration of a conviction that was vacated or set aside solely because the defendant completed service of his sentence. Insofar as a § 1326 defendant's offense level is concerned, the term "conviction" is not defined in the Guidelines, either in the generally applicable definitions, see Guidelines § 1B1.1 Application Note 1, or in § 2L1.2. We have observed, however, that "definitions found in § 4A1.2," governing determination of a defendant's criminal history category, "have often been borrowed to interpret terms in § 2L1.2," *United States v. Galicia–Delgado*, 130 F.3d 518, 521 (2d Cir. 1997); *accord United States v. Cuevas*, 75 F.3d at 782 n. 10, and we note that § 4A1.2 reveals that convictions vacated for reasons unrelated to guilt or flaws in the proceedings leading to the determination of guilt are not to be disregarded. Thus, that section defines " '[c]onvicted of an offense,' " to mean simply "that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." Guidelines § 4A1.2(a)(4). And the commentary states that a sentence resulting from a conviction that has been reversed because of errors of law or subsequently discovered evidence exonerating the defendant is not to be counted, see *id.* § 4A1.2 Application Note 6; but sentences resulting from unexpunged convictions that have been "set aside ... for reasons unrelated to innocence or errors of law .... are to be counted," *id.* Application Note 10.

█ We conclude that, there being no pertinent provision in either the immigration statute or the Guidelines to suggest the applicability of state law, the question of whether a vacated conviction remains a conviction for purposes of § 1326(b) and Guidelines § 2L1.2 is, in accordance with the principle enunciated in *Dickerson,* a question of federal law. As the First Circuit observed in *United States v. Cuevas,* the circuit courts have consistently interpreted "conviction"

according to uniform federal standards for purposes of the laws governing immigration offenses. If Congress had disapproved of these cases, it surely could have amended the immigration laws in the same fashion it did the firearms statute. That Congress has chosen not to do so reinforces our conclusion that "conviction" in the context of the laws governing immigration offenses, including federal sentencing for those offenses, remains a matter of federal definition.

75 F.3d at 782 (applying *Dickerson* principle in determining that, as a matter of federal law, "conviction" in Guidelines § 2L1.2 includes state-court order of probation imposed after plea of *nolo contendere* ).

In the present case, Campbell's 1989 Texas conviction was set aside solely because the period of Campbell's probation had "expired" and because (so far as the Texas court was aware) "all conditions of [Campbell's sentence] ha[d] been satisfactorily fulfilled." (1994 Texas Order.) His conviction was not reversed, and the vacatur order was not based on any showing of innocence or on any suggestion that the conviction had been improperly obtained. The 1994 Texas Order thus did not alter the significance, for purposes of immigration offenses, of Campbell's conviction of the aggravated felony to which he had pleaded guilty. Under the *Dickerson* principle, we see no basis for excluding the Texas conviction in the calculation of Campbell's federal sentence.

█ Nor do we find applicable the rule of lenity. That rule comes into operation only if there is a statutory ambiguity. *See, e.g., Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). We see no such ambiguity here.

## CONCLUSION

We have considered all of Campbell's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.