**Felix SUTHERLAND, Petitioner,**

**v.**

**Janet RENO, Attorney General of the United States, Respondent.**

**No. 99–4145.**

United States Court of Appeals, Second Circuit.

Submitted July 12, 2000.

Decided Sept. 15, 2000.

Amended Sept. 20, 2000.

Robert D. Kolken, Sacks & Kolken, Buffalo, N.Y. (Eric W. Schultz, on the brief), for petitioner.

Diogenes P. Kekatos, Assistant United States Attorney for the Southern District of New York, for Mary Jo White, United States Attorney for the Southern District of New York (Jeffrey Oestericher, Assistant United States Attorney for the Southern District of New York, on the brief), for respondent.

Before: WALKER, POOLER, and SOTOMAYOR, Circuit Judges.

## AMENDED OPINION

SOTOMAYOR, Circuit Judge:

Felix Sutherland, a citizen of Trinidad and a permanent resident of the United States, petitions this Court for review of an order of the Board of Immigration Appeals ("BIA") affirming that he is eligible

for removal under 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of a crime of domestic violence based upon his July 1998 conviction in Massachusetts for indecent assault and battery on a person over the age of fourteen. Petitioner claims that his conviction does not satisfy either of the two requisite elements for a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i). Specifically, he contends that (1) his offense was not a "crime of violence" within the meaning of 18 U.S.C. § 16(b); and (2) his victim was not protected from his acts by the domestic or family violence laws of Massachusetts. For the reasons discussed, we conclude that petitioner is removable under 8 U.S.C. § 1227(a)(2)(E)(i) as an alien who was convicted of a crime of domestic violence and affirm the BIA's decision.

## BACKGROUND

Petitioner, a citizen of Trinidad, entered this country as a lawful permanent resident on January 20, 1992. In April 1998, petitioner was charged with indecent assault and battery on a person over the age of fourteen in violation of Mass. Gen. Laws ch. 265, § 13H (1990),[1] for allegedly reaching down the pajama pants of his 19–year–old stepdaughter, who was residing in his household at the time of the incident. On July 27, 1998, petitioner pleaded guilty to the charge and was sentenced to eleven months' incarceration, suspended, and was placed on probation for a term of three years.[2]

Based on this conviction, the Immigration and Naturalization Service ("INS") commenced removal proceedings against petitioner on August 24, 1998, charging that he was removable under 8 U.S.C. § 1227(a)(2)(E)(i). At his removal hearing, petitioner admitted that he was convicted under Mass. Gen. Law ch. 265, § 13H, but denied that his conviction was for a "crime of domestic violence" as defined under 8 U.S.C. § 1227(a)(2)(E)(i). On January 20, 1999, Immigration Judge John B. Reid ("IJ") rejected petitioner's argument and determined that he was removable under 8 U.S.C. § 1227(a)(2)(E)(i) because his § 13H conviction constituted a crime of domestic violence.

Reviewing the matter on appeal, the BIA noted that an offense does not fall within the definition of a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i) unless (1) the crime is a "crime of violence" as defined in 18 U.S.C. § 16, and (2) the person against whom the crime was committed was a "protected person" within the meaning of § 1227(a)(2)(E)(i). Applying its traditional categorical approach to criminal convictions, the BIA determined that (1) petitioner's crime constituted a "crime of violence" because the crime, as defined by Massachusetts case law, requires an intentional touching that is both indecent and nonconsensual and, therefore, involves a substantial risk that physical force may be used, and (2) petitioner's victim was a "protected person" under Massachusetts law. The BIA therefore affirmed the IJ's decision and dismissed petitioner's appeal on August 27, 1999.

Petitioner now appeals from the BIA's decision pursuant to 8 U.S.C. § 1252(a)(1).

## DISCUSSION

I. Standard of Review

 When reviewing an agency determination, federal courts must accord substantial deference to an agency's interpretation of the statutes it is charged with administering. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207,

---

1. Petitioner was originally charged with indecent assault and battery on a mentally retarded person in violation of Mass. Gen. Laws ch. 265, § 13F, but that charge was later stricken and substituted with a charge under Mass. Gen. Laws ch. 265, § 13H.

2. As part of his sentence, petitioner was also referred for sex offender evaluation and treatment, and was ordered not to have any contact with the victim.

94 L.Ed.2d 434 (1987) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Michel v. INS,* 206 F.3d 253, 260 (2d Cir.2000). In such circumstances, where the relevant statutory provision is silent or ambiguous, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778.

■ In contrast to situations where a federal agency is interpreting a statute it is charged with administering, "courts owe no deference to an agency's interpretations of state or federal criminal laws, because the agency is not charged with the administration of such laws." *Michel,* 206 F.3d at 262 (opinion of Sotomayor, J.).[3] In *Michel,* this Court adopted the position of the Fifth Circuit that "where the BIA is interpreting [a provision] of the [Immigration and Naturalization Act ('INA') ], *Chevron* deference is warranted, but where the BIA is interpreting state or federal criminal laws, we must review its decision *de novo.*" *Id.* (citing *Hamdan v. INS,* 98 F.3d 183, 185 (5th Cir.1996) ("We must uphold the BIA's determination [of] what conduct constitutes moral turpitude under the INA if it is reasonable. However, a determination of the elements of a [state] crime ... for purposes of deportation pursuant to the INA is a question of law, which we review *de novo.*")).

■ Notwithstanding this Court's ruling in *Michel,* the Government adopts the remarkable position that "[t]o the extent the BIA's determination required the examination of federal and state criminal law, [ ] the need for deference to the BIA's judgment is not diminished." Respondent's Br. at 16. Apparently, the Government regards this Court's statement of the standard of review in *Michel* as nonbinding *dictum.* We disagree. *See Michel,* 206

F.3d at 263 (holding "upon a *de novo* review of the relevant criminal statute ... that all violations of New York Penal Law § 165.40 are, by their nature, morally turpitudinous").

In support of its position, the Government cites *Aguirre v. INS,* 79 F.3d 315 (2d Cir.1996), to illustrate an instance where "this Court has deferred to the BIA's administration of the INA, even at the expense of departing from its own contrary interpretations of federal criminal statutes." Respondent's Br. at 17. To be sure, in *Aguirre,* this Court departed from its earlier interpretation of a federal criminal statute. *See Aguirre,* 79 F.3d at 318 (abandoning the statutory construction adopted in *Jenkins v. INS,* 32 F.3d 11 (2d Cir.1994)). But the *Aguirre* panel (joined by the *Jenkins* panel) *voluntarily* abandoned its earlier construction of the relevant statute in the interest of nationwide uniformity. *See Aguirre,* 79 F.3d at 317 ("The issue here is not whether courts must take direction from an agency ruling, but whether they may voluntarily accept such guidance for the purpose of achieving a satisfactory statutory interpretation.... We have concluded that the interests of nationwide uniformity outweigh our adherence to Circuit precedent in this instance.") (citations and internal quotation marks omitted). In sum, nothing in *Aguirre* lends support to the notion that this Court is bound to defer to the BIA where the BIA has interpreted a criminal statute. To the contrary, *Michel* explicitly holds that the standard of review is such cases is *de novo* because the INS is not charged with the administration of such laws. *See Michel,* 206 F.3d at 262. Therefore, to the extent this Court must interpret Massachusetts or federal criminal laws, we review those aspects of the BIA's decision *de novo. See id.*

---

**3.** We note that in *Michel,* Judge Calabresi authored the majority opinion for Parts I–III and Judge Sotomayor authored the majority

opinion for Parts IV–V. *See Michel,* 206 F.3d at 256, 261.

## II. Merits

■ In the instant case, the BIA determined that petitioner was eligible for removal under 8 U.S.C. § 1227(a)(2)(E)(i), which provides in relevant part that:

(a) Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: ...

(2)(E)(i) Any alien who at any time after admission is convicted of a crime of domestic violence.... For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) ... by any [ ] individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i). As a threshold matter, we agree with the BIA that the determination of whether petitioner's crime constituted a "crime of domestic violence" under § 1227(a)(2)(E)(i) involves a two-pronged analysis: (1) whether petitioner's crime was a "crime of violence" as defined by 18 U.S.C. § 16; and (2) whether petitioner's victim was a "protected person" within the meaning of § 1227(a)(2)(E)(i).

### A. *"Crime of Violence"*

With respect to the first prong of the § 1227(a)(2)(E)(i) analysis, 18 U.S.C. § 16 defines a "crime of violence" as follows:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The BIA determined that petitioner committed a "crime of violence" within the meaning of § 16(b), but not under § 16(a). On appeal, the parties do not dispute that petitioner's conviction fails to meet the § 16(a) definition.

■ A "crime of violence" under § 16(b) has two constituent elements: (1) that the crime is a felony; and (2) that the crime, "by its nature," involves a substantial risk that physical force may be used. In this case, petitioner was convicted of indecent assault and battery on a person over the age of fourteen, in violation of chapter 265, § 13H of the Mass. Gen. Laws, which states that:

Whoever commits an indecent assault and battery on a person who has attained age fourteen shall be punished by imprisonment in the state prison for not more than five years, or by imprisonment for not more than two and one-half years in a jail or house of correction.

Mass. Gen. Laws ch. 265, § 13H. Regarding the first element under 18 U.S.C. § 16(b), petitioner does not dispute that he was convicted of a felony.[4] As to the second element, however, petitioner maintains that his conviction was not for an offense that, "by its nature," involves a substantial risk that physical force may be used.

■ Analyzing petitioner's state criminal conviction *de novo*, we agree with the BIA that any and all convictions under § 13H would, by their nature, necessarily involve a substantial risk that physical force may be used. Although the statutory language of § 13H does not set forth

---

4. Under federal law, a crime is a "felony" if the maximum term of imprisonment authorized for the offense is "more than 1 year." *See* 18 U.S.C. § 3559(a). In Massachusetts, the crime of indecent assault and battery on a person over the age of fourteen carries a maximum term of incarceration of five years in a state prison or two and one-half years in a jail or house of correction. *See* Mass. Gen. Laws ch. 265, § 13H.

the elements of petitioner's offense, Massachusetts case law defines the crime as:

> [a] touching ... [that] when, judged by the normative standard of societal mores, is violative of social and behavioral expectations, in a manner which is fundamentally offensive to contemporary moral values and which the common sense of society would regard as immodest, immoral, and improper. So defined the term indecent affords a reasonable opportunity for a person of ordinary intelligence to know what is prohibited.

*Commonwealth v. Lavigne,* 42 Mass.App. Ct. 313, 676 N.E.2d 1170, 1172 (1997) (citations and internal quotation marks omitted); *see also Maghsoudi v. INS,* 181 F.3d 8, 14–15 (1st Cir.1999) (same); *Commonwealth v. Mosby,* 30 Mass.App.Ct. 181, 567 N.E.2d 939, 941 (1991) (same); *Commonwealth v. Perretti,* 20 Mass.App.Ct. 36, 477 N.E.2d 1061, 1066 (1985) (same).

■ Significantly, lack of consent is also a requisite element of a § 13H violation. *See Maghsoudi,* 181 F.3d at 15 (noting that, under Massachusetts law, "[l]ack of consent [i]s an element of indecent assault on a person fourteen or older"); *Commonwealth v. Burke,* 390 Mass. 480, 457 N.E.2d 622, 625 n. 4 (1983) (stating, with respect to § 13H, that "[n]onconsent is an element of the crime of indecent assault and battery on a person who has attained the age of fourteen"), *partially abrogated by* 1986 Mass. Acts ch. 187, (declaring, with respect to § 13B, that a child under the age of fourteen is incapable of giving consent); *Commonwealth v. Conefrey,* 37 Mass.App.Ct. 290, 640 N.E.2d 116, 122 n. 10 (1994) ("Nonconsent is only an element of indecent assault and battery for victims over fourteen [§ 13H]"), *overruled on other grounds,* 420 Mass. 508, 650 N.E.2d 1268 (1995); *Mosby,* 567 N.E.2d at 941 (stating that, in order to convict under § 13H, "the Commonwealth must prove beyond a reasonable doubt that the defendant committed an intentional, *unprivileged,* and indecent touching of the victim") (quoting *Perretti,* 477 N.E.2d at 1066) (em-

phasis added); *Commonwealth v. Rowe,* 18 Mass.App.Ct. 926, 465 N.E.2d 1220, 1221 (1984) (noting that, after *Burke,* lack of consent is clearly an element of a conviction under § 13H).

In its determination, the BIA reasoned that, because any offense under § 13H is, by definition, nonconsensual, "the existence of lack of consent by the victim necessarily creates a substantial risk that the perpetrator *may* use force or violence to accomplish the indecent touching of the victim." Certified Administrative R. in A43 157 994 at 5 (emphasis added). Like the BIA, we are persuaded that any violation of Mass. Gen. Laws ch. 265, § 13H, by its nature, presents a substantial risk that force *may* be used in order to overcome the victim's lack of consent and accomplish the indecent touching. *See United States v. Rodriguez,* 979 F.2d 138, 141 (8th Cir. 1992) ("[T]he statutory language 'may' and 'substantial risk' [in 18 U.S.C. § 16(b)] must not be ignored.... It matters not one whit whether the risk ultimately causes actual harm. Our scrutiny ends upon a finding that the risk of violence is present.").

In *United States v. Reyes–Castro,* 13 F.3d 377 (10th Cir.1993), the Tenth Circuit observed that:

> Because the crime involves a non-consensual act upon another person, there is a substantial risk that physical force may be used in the course of committing the offense. It does not matter whether physical force is actually used.... Sexual abuse of a child is therefore a crime of violence under 18 U.S.C. § 16(b).

*Id.* at 379; *see also McCann v. Rosquist,* 185 F.3d 1113, 1119–120 (10th Cir.1999), *vacated on other grounds by* — U.S. ——, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000) ("In *Reyes–Castro,* we focused on the relationship between lack of consent and the substantial risk of the application of physical force. We conclude today that such relationship is significant regardless of the age of the victim."). Other circuits have echoed similar reasoning, analogizing

to the categorical classification of burglary as a crime of violence. *See, e.g., United States v. Velazquez–Overa,* 100 F.3d 418, 422 (5th Cir.1996) ("If burglary, with its tendency to cause alarm and to provoke physical confrontation, is considered a violent crime under 18 U.S.C. § 16(b), then surely the same is true of the far greater intrusion that occurs when a child is sexually molested."); *United States v. Wood,* 52 F.3d 272, 276 (9th Cir.1995) ("Just as it is possible to commit burglary—expressly defined as a crime of violence—without actually causing physical injury, the fact that conviction [for 'taking indecent liberties with a minor'] was theoretically possible under circumstances which did not end in violence ... does not alter our conclusion that the offense generally posed a serious potential risk of physical injury to the victim."). We agree with the reasoning of these cases and find that in indecent assault and battery cases, the non-consent of the victim is a touchstone for determining whether a crime "involves a substantial risk that physical force against the person ... may be used...." 18 U.S.C. § 16(b). *Cf. Xiong v. INS,* 173 F.3d 601, 607 (7th Cir.1999) (holding that an alien's Wisconsin conviction for sexual contact with a person under age 16 was not a "crime of violence" under 18 U.S.C. § 16(b) because "the conduct of which [defendant] was convicted consisted of *consensual* sex between a boyfriend and his fifteen-year-old girlfriend") (emphasis added). Because the victim's non-consent is a necessary element for

conviction under Mass. Gen. Laws ch. 265, § 13H, we hold that petitioner was convicted of a "crime of violence" within the meaning of 18 U.S.C. § 16(b).[5]

**B. *Was Petitioner's Victim a "Protected Person"?***

■ Turning to the second prong of the § 1227(a)(2)(E)(i) analysis, the BIA concluded that the petitioner's victim—his 19–year–old stepdaughter—was "a person who [wa]s protected from [his] acts under the domestic or family violence laws of ... any State," 8 U.S.C. § 1227(a)(2)(E)(i), because "Massachusetts law protects all 'family or household members' from violent crimes and other forms of abuse." (quoting Mass. Gen. Laws ch. 209A, § 1). On appeal, petitioner maintains that his victim was not a "protected person" under Massachusetts law and, therefore, he did not commit a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i). Interpreting Massachusetts state law *de novo,* we agree with the BIA that Chapter 209A of the Mass. Gen. Laws generally protects household members—including petitioner's stepdaughter—from domestic abuse. Accordingly, we conclude that petitioner's conviction for indecent assault and battery satisfies the second prong of 8 U.S.C. § 1227(a)(2)(E)(i).

Chapter 209A, entitled "Abuse Prevention," "provides a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse."[6] *Commonwealth*

---

**5.** In his brief, petitioner emphasizes that, pursuant to *In re Sweetser,* Int. Dec. 3390, 1999 WL 311950 (BIA May 19, 1999), if a state criminal statute is "divisible" (*i.e.,* it encompasses offenses that both do and do not constitute "crimes of violence" under 18 U.S.C. § 16), the BIA is required to look to the specific facts underlying the record of conviction to determine whether the conviction is a deportable offense. *See generally Michel,* 206 F.3d at 265 n. 3 (noting that "the BIA cannot justify a categorical approach if the relevant [criminal] statute encompasses both acts that do and do not involve moral turpitude"). Although petitioner's understanding of the divisibility principle is essentially accurate, we find that the BIA correctly adhered to its

categorical approach in this case because, as discussed above, Mass. Gen. Laws ch. 265, § 13H is not divisible. All § 13H violations are, by their nature, "crimes of violence" under 18 U.S.C. § 16(b) because the non-consent of the victim is a necessary element of every violation.

**6.** "Abuse" is defined as "the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress." Mass. Gen. Laws ch. 209A, § 1.

*v. Gordon,* 407 Mass. 340, 553 N.E.2d 915, 917 (1990). Petitioner contends that "in order to be protected by Massachusetts law involving domestic violence, a family or household member must first notify the court and obtain an order of protection, or abuse prevention order, placing an alleged abuser on notice that violation of such order constitutes a criminal offense." Petitioner's Br. at 18. Because his stepdaughter never obtained an order of protection under Chapter 209A, petitioner argues that she was not a protected person under Massachusetts law, and that his offense therefore cannot be deemed a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i). Chapter 209A does indeed provide a procedure for the issuance and enforcement of protective orders for alleged victims of household abuse. Contrary to petitioner's assertions, however, Chapter 209A also provides general protection for household members regardless of whether they avail themselves of such protective orders.

Mass. Gen. Laws ch. 209A, § 1 defines "family or household members" to include "persons who ... are or were residing together in the same household," and petitioner admits that his stepdaughter resided in the household at the time of his offense. Chapter 209A, § 6 further states that "[w]henever any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse," including "assist[ing] the abused person in obtaining medical treatment," "assist[ing] the abused person in locating and getting to a safe place," "giv[ing] such person immediate and adequate notice of his or her rights," and "assist[ing] such person by activating the emergency judicial system when the court is closed for business." Mass Gen. Laws ch. 209A, § 6. Moreover, the statute provides that even when a protective order is not in place, an officer shall arrest the alleged abuser whenever he has probable cause to believe

that the perpetrator has either (1) committed a felony; (2) committed a misdemeanor involving abuse; or (3) committed an assault and battery. *Id.* Thus, petitioner's claim that his victim was not a "protected person" under Massachusetts law lacks merit.

## CONCLUSION

For the foregoing reasons, we hold that petitioner is eligible for removal under 8 U.S.C. § 1227(a)(2)(E)(i) because he committed a "crime of domestic violence." Petitioner's convicted offense was both (1) a "crime of violence" under 18 U.S.C. § 16(b) because it involved a substantial risk that physical force may have been used; and (2) crime committed against a person protected by the domestic or family violence laws of Massachusetts. Accordingly, we affirm the August 27, 1999 determination of the Board of Immigration Appeals.