Durant BLAKE, a/k/a Terrel Carner, a/k/a Durant Stanley, Petitioner,

v.

Alberto GONZALES, Attorney General of the United States, Respondent.

Docket No. 05–2586–AG.

United States Court of Appeals, Second Circuit.

Argued: Jan. 24, 2007.

Decided: March 28, 2007.

---

Susan V.H. Degrave, Law Office of Susan V.H. DeGrave, Springfield, MA, for petitioner.

Victoria S. Shin, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney for the District of Connecticut, William J. Nardini, Assistant United States Attorney, on the brief), New Haven, CT, for respondent.

Before KEARSE and SOTOMAYOR, Circuit Judges, and CEDARBAUM, District Judge.*

SOTOMAYOR, Circuit Judge.

Petitioner Durant Blake seeks review of the April 28, 2005 decision of the Board of Immigration Appeals ("BIA") affirming the October 1, 2004 decision of Immigration Judge ("IJ") Matthew J. D'Angelo that ordered Blake's removal from the United States. *In re Durant Blake,* No. A 91 674 941 (B.I.A. Apr. 28, 2005), *aff'g* No. A 91 674 941 (Immig. Ct. Hartford Oct. 1, 2004). The IJ ordered Blake's removal (1) as an alien convicted of an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii), and, (2) because Blake remained in the country without authorization from the Immigration and Naturalization Service ("INS")[1] after his temporary resident status was terminated in 1991. Blake principally claims that the BIA erred in holding that his 1990 conviction for assault and battery on a police officer under Massachusetts law, *see* Mass. Gen. Laws ch. 265, § 13D, constitutes a "crime of violence" under 18 U.S.C. § 16 and, therefore, an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(F). We disagree, and hold that the BIA properly affirmed Blake's removal as an aggravated felon. Accordingly, we dismiss his petition for review.

---

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

1. Responsibility for enforcing United States immigration laws was transferred in 2002 to the Bureau of Immigration and Customs Enforcement within the new Department of Homeland Security. *See Thapa v. Gonzales,* 460 F.3d 323, 325 n. 1 (2d Cir.2006). For purposes of clarity and consistency, we refer to the Government's immigration enforcement authority as the INS throughout this opinion.

## BACKGROUND

Blake, a citizen of Jamaica, entered the United States in 1985 and was granted temporary resident status in 1988 under the Special Agricultural Workers program. *See* 8 U.S.C. § 1160. On November 20, 1990, the United States Department of Justice notified Blake that it intended to terminate his temporary resident status based on his September 20, 1990 convictions in Massachusetts state court for one count of cocaine possession and two counts of assault and battery on a police officer. On February 12, 1991, the Department of Justice informed Blake that he had not responded to the Notice of Intent to Terminate and therefore he had "not overcome the grounds for termination of [his] temporary resident status." It therefore terminated his temporary resident status.

On October 15, 2002, Blake pleaded guilty in the United States District Court for the District of Massachusetts to making false statements in an application for a passport and to the deceitful use of a social security number in violation, respectively, of 18 U.S.C. § 1542 and 42 U.S.C. § 408(a)(7)(B). Two weeks later, on October 31, 2002, the INS commenced removal proceedings against him by filing a Notice to Appear in the Hartford immigration court. Blake appeared before IJ D'Angelo on September 15, 2004 for a hearing at which the government amended the Notice to Appear by submitting an I–261, resulting in, *inter alia,* the following charges relevant to this appeal:

3. On September 12, 1990, you were admitted as a temporary resident based upon an application for adjustment of status under [the Special Agricultural Workers program,] approved on September 12, 1990, and you were authorized to remain in the United States for the duration of temporary residence.

4. On February 12, 1991, your lawful temporary (SAW) status was terminated, based upon your controlled substance conviction on September 20, 1990, and you have remained in the United States since that time without the authorization of the [INS].

6. On September 20, 1990, you were convicted of assault and battery upon a police officer in violation of Massachusetts General Laws chapter 265 sec. 13D, for which a sentence of two years suspended was imposed.

After several continuances, the IJ held a removal hearing on October 1, 2004. Blake admitted that he was a citizen of Jamaica, and not a citizen of the United States, but denied all other charges and allegations. Based on documentary evidence in the record, which included the INS's notice of intent to terminate Blake's temporary resident status as well as records of Blake's state and federal court convictions, the IJ determined that the government had sustained all charges and allegations against Blake by "clear, convincing and unequivocal evidence." The IJ held Blake removable on two independent grounds: (1) on the basis of his conviction for assault and battery upon a police officer, which the IJ determined was a crime of violence and, therefore, an aggravated felony; and (2) because Blake remained in the country without authorization from the INS after his temporary resident status was terminated in 1991. With respect to the first finding, the IJ determined that "assault and battery upon a police officer in Massachusetts under Chapter 265, Section 13D does, in fact, have as an element the use, attempted use, or threatened use of physical force against the person or property of another," and thus came within the ambit of a crime of violence as defined by 18 U.S.C. § 16(a). In the alternative, the IJ held that the offense "is a felony that, by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the course of committing the offense," and thus came within the ambit of 18 U.S.C. § 16(b). Accordingly, the IJ held, Blake was an aggravated felon and was removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). In addition, based on uncontested documentary evidence, the IJ held Blake removable because he remained in the United States after his temporary resident status had been terminated. *See* INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

The IJ also denied Blake's request for a continuance in order to permit adjudication of an I–130 petition for an alien relative filed on his behalf by his son. IJ D'Angelo deemed Blake ineligible for adjustment of status, cancellation of removal or a waiver of conviction under INA § 212(h), 8 U.S.C. § 1182(h), because he was an aggravated felon and had been convicted of a drug-related crime involving cocaine, and further concluded that Blake was precluded from seeking a waiver of his convictions under INA § 212(c), 8 U.S.C. § 1182(c), and *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), because he was not a lawful permanent resident.

Blake timely appealed to the BIA, which affirmed the IJ's decision on April 28, 2005. The BIA agreed with the IJ and held that, "whether analyzed under subsection (a) or (b) of … 18 U.S.C. § 16, the respondent's [assault and battery] conviction constitutes a crime of violence such that he is removable under section 237(a)(2)(A)(iii) of the Act and, accordingly, is not eligible for cancellation of removal." The BIA noted that the First Circuit adjudged assault and battery upon a police officer under Massachusetts law to be a crime of violence in the context of a sen-

tencing enhancement case, *United States v. Santos*, 363 F.3d 19, 23 (1st Cir.2004), and deemed this a persuasive interpretation of the Massachusetts law. Noting, however, that Blake's case fell within the jurisdiction of the Second Circuit, the BIA found that case law from this Court did not require a different result: "While the Second Circuit has found that assault in the third degree does not necessarily contain the element of use of force and, therefore, does not qualify as a crime of violence under 18 U.S.C. § 16(a), it is clear that battery, at least the common law definition, does require some physical contact and force and, furthermore, that since the respondent's conviction qualifies as a felony, it only need involve the substantial risk that force will be used under 18 U.S.C. § 16(b)." The BIA also affirmed the IJ's denial of Blake's motion for a continuance, holding that the IJ had not abused his discretion because Blake was not eligible for the relief requested.

Blake timely filed a petition for review in this Court.

## DISCUSSION

### I. Jurisdiction

■ Federal courts generally lack jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed a criminal offense," INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), including, *inter alia*, offenses constituting aggravated felonies, *see* INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), the provision addressing aggravated felonies. However, under the INA as amended by the REAL ID Act of 2005, we are permitted to review "questions of law raised upon a petition for review filed with an appropriate court of appeals." Pub.L. No. 109–13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(2)(D)). Be-

cause the question of whether Blake's offense is a "crime of violence," and therefore constitutes an aggravated felony, is such a question of law, we have jurisdiction to review it. *See Dos Santos v. Gonzales*, 440 F.3d 81, 83 (2d Cir.2006). If we determine that Blake's conviction involves a crime of violence, and therefore is an aggravated felony, we must dismiss his petition for review for lack of jurisdiction. *See Vargas–Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 175–76 (2d Cir.2006).

## II. Standard of Review

■ "When this Court is called upon to construe a provision of the INA, we must give substantial deference to the BIA's interpretation of the statutes it is charged with administering." *Abimbola v. Ashcroft*, 378 F.3d 173, 175 (2d Cir.2004) (internal quotation marks omitted). However, "[i]n contrast to situations where a federal agency is interpreting a statute it is charged with administering, courts owe no deference to an agency's interpretations of state or federal criminal laws, because the agency is not charged with the administration of such laws." *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir.2000) (internal quotation marks omitted). Because our consideration of Blake's petition for review requires interpretation of federal and state criminal laws—namely 18 U.S.C. § 16 and Massachusetts General Laws chapter 265, section 13D—our review of the petition is *de novo*. *See Vargas–Sarmiento*, 448 F.3d at 165.

## III. Relevant Statutes

### A. The INA

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). Of the many aggravated felonies identified by Congress in the INA, the one relevant here is "a crime of violence (as defined in section 16 of Title 18...) for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). A "crime of violence," in turn, is defined in 18 U.S.C. § 16 as:

  (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

  (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Under the plain language of § 16(a), one of the elements of a crime of violence must be "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). *See Chrzanoski v. Ashcroft*, 327 F.3d 188, 191 & n. 6 (2d Cir.2003).

As the Supreme Court noted in *Leocal v. Ashcroft*, 543 U.S. 1, 10, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), "Section 16(b) sweeps more broadly than § 16(a)." It requires only two elements: (1) a felony that (2) " 'by its nature,' involves a substantial risk that physical force" may be used. *Sutherland*, 228 F.3d at 175 (quoting 18 U.S.C. § 16(b)). To determine whether an offense is a crime of violence within the meaning of § 16(b), this Court employs the "categorical approach." *See Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir.2001). Under this approach, " 'the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]' " *Id.* (quoting *Michel v. INS*, 206 F.3d 253, 270 (2d Cir. 2000) (Calabresi, J., dissenting) (alteration in *Dalton*)); *see also Leocal*, 543 U.S. at 7,

125 S.Ct. 377 (noting that, to determine whether an offense is a crime of violence under § 16(b), a court must "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime").

### B. *Mass. Gen. Laws ch. 265, § 13D*

Assault and battery on a police officer is an offense under chapter 265, section 13D ("section 13D") of the Massachusetts General Laws, the section under which Blake was convicted.[2] In its entirety, it provides:

> Whoever commits an assault and battery upon a police officer, firefighter, correction officer, sheriff, deputy sheriff, court officer, parole supervisor, constable, an employee of the department of social services, an employee of the registry of motor vehicles having police powers, an employee in the department of youth services with the care and custody of a juvenile offender, a public school teacher, a public school administrator or any person in the public school system having duties similar to a teacher or administrator when such person is engaged in the performance of his duty at the time of such assault and battery, or a bus, trackless trolley, rail or rapid transit motorman, operator, gateman, guard, or collector when such person is engaged in the performance of his duties at the time of such assault and battery, shall be punished by imprisonment for not less than ninety days nor more than two and one-half years in a house of correction or by a fine of not less than five hundred nor more than five thousand dollars.

Massachusetts law does not define the elements of criminal assault and battery, but rather looks to the common law for definition. *See Commonwealth v. Burke*, 390 Mass. 480, 457 N.E.2d 622, 624 (1983) (stating that "[a]ssault and battery is a common law crime now set forth in [Massachusetts General Laws chapter] 265, § 13A" and analyzing the elements of the offense by reference to the common law). Under the common law of Massachusetts, there are two theories of assault and battery. "Under the first theory, an assault and battery is the intentional and unjustified use of force upon the person of another, however slight." *Commonwealth v. Ford*, 424 Mass. 709, 677 N.E.2d 1149, 1151 (1997) (internal quotation marks omitted) (hereinafter, the "intentional theory"). Under the second theory, assault and battery can be defined as "the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." *Id.* (internal quotation marks omitted) (hereinafter, the "wanton or reckless theory"). To sustain a conviction for assault and battery under this second theory, "the Commonwealth must prove (1) that the defendant's conduct involve[d] a high degree of likelihood that substantial harm will result to another, or that it constitute[d] ... a disregard of probable harmful consequences to another, *and* (2) that, as a result of that conduct, the victim suffered some physical injury." *Commonwealth v. Correia*, 50 Mass.App.Ct. 455, 737 N.E.2d 1264, 1266–67 (2000) (internal quotation marks and citations omitted).[3]

---

**2.** Section 13D was amended on December 31, 1990, after Blake was convicted thereunder. The version under which Blake was convicted forms the basis of our analysis.

**3.** We note that *Correia* is a decision of the Massachusetts Appellate Court, and not the state's highest court. However, the Massachusetts Supreme Judicial Court has not authoritatively opined on the elements of assault and battery committed by means of wanton or reckless conduct, and we are bound to apply the law as interpreted by a state's intermediate appellate courts unless we find persuasive evidence that the state's highest court, which has not ruled on this issue, would reach a

The statute under which Blake was convicted lists a broad array of public officials against whom an assault and battery constitutes a specially recognized crime. Although Blake's judgment of conviction makes clear that he was convicted of assault and battery on a police officer, as opposed to some other specially recognized public official, section 13D does not recognize assault and battery on a police officer as an offense separate from the other offenses covered by the statute. Section 13D defines the crime, and merely lists which public officials are covered by the provision. We must be specific in our analysis, however, given that criminal statutes may "encompass[ ] diverse classes of criminal acts—some of which would categorically be grounds for removal and others of which would not." *Dickson v. Ashcroft*, 346 F.3d 44, 48 (2d Cir.2003). In such cases, a court may treat the statute as "divisible," *id.*, for purposes of determining whether the precise "offense of conviction" is one for which the INA permits removal. *Leocal*, 543 U.S. at 7, 125 S.Ct. 377; *see also Vargas–Sarmiento*, 448 F.3d at 167 ("A criminal statute is 'divisible' if it encompasses multiple categories of offense conduct, some, but not all, of which would categorically constitute aggravated felonies under the INA."). If a statute is divisible, "while a court may not look to the particular facts of an alien's conduct to determine if the alien actually used force ... a court may refer to the record of conviction to determine whether the alien's offense conduct falls within a category that would justify removal." *Canada v. Gonzales*, 448 F.3d 560, 566 (2d Cir. 2006). The "record of conviction" includes the "charging document, plea agreement, a verdict or judgment of conviction, and a

record of the sentence or plea transcript." *Abimbola*, 378 F.3d at 177.

If we determine that a statute is not divisible, we cannot construe the offense it describes as an aggravated felony because the statute cannot be cleanly divided between conduct that is categorically a crime of violence and conduct that is not categorically a crime of violence. *See Canada*, 448 F.3d at 567. Here, Blake argues that section 13D is not divisible. He notes that it applies to a range of public employees, and observes that, at the time he was convicted, the statute actually named those categories of persons. Because assault and battery on many of these public employees does not entail the same risk of violence as it does on a police officer, Blake argues, the statute allows for conviction of nonviolent offenses and therefore does not satisfy the requirements of § 16(b).

We dispose of this argument easily, as this Court considered and rejected a virtually identical proposition in *Canada*. *See id.* at 567–68. The Connecticut assault statute under consideration in *Canada*, like the Massachusetts statute at issue here, listed serially categories of public safety personnel covered by the statute. Canada asserted that assault against certain enumerated categories of public personnel did not inherently involve a risk that force would be used against them, and argued that because the statute did not delineate the various categories of public employees in specific subsections, it could not be treated as divisible. We rejected this argument and declared the statute divisible, in part because "the various categories of public safety officers protected by the statute are listed sequentially, each separated by a comma, and are phrased in

different conclusion. *See Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir.

1999).

the disjunctive." *Id.* at 568. Because the same is true of the Massachusetts statute at issue here, and because Blake has offered no persuasive reason for us to depart from the Court's reasoning in *Canada,* we treat the statute as divisible and consider only whether assault and battery on a police officer is a crime of violence. *See Abimbola,* 378 F.3d at 177 ("When the criminal statute at issue encompasses some classes of criminal acts that fall within the federal definition of aggravated felony and some classes that do not fall within the definition, the statute is considered divisible." (internal quotation marks omitted)).

Having determined that the Massachusetts statute is divisible, we now proceed to "look to the record of conviction for the limited purpose of determining which public safety employee was the subject of any assault, thereby permitting [us] to determine whether the alien's conviction was under a section of the statute that permits removal." *Canada,* 448 F.3d at 568. Blake does not dispute that he was convicted of assault and battery on a police officer, and his Massachusetts state court record sheet makes clear that he was convicted of two counts of that offense. For purposes of determining whether Blake committed an aggravated felony, we therefore look to Massachusetts law governing this particular offense.

Under Massachusetts law, the crime of assault and battery on a police officer incorporates the elements of normal assault and battery and imposes additional requirements: the officer must be engaged in the performance of his duties at the time and the defendant must know that the victim was an officer engaged in the

performance of his duties. This is true both under the intentional theory, *see Commonwealth v. Moore,* 36 Mass.App.Ct. 455, 632 N.E.2d 1234, 1238 (1994),[4] and under the wanton or reckless theory, *see Correia,* 737 N.E.2d at 1265 & n. 2, 1266.

## IV. Analysis

■ We must determine *de novo* whether the IJ and BIA correctly analyzed section 13D under 18 U.S.C. § 16. Because Blake's record of conviction does not make clear whether he was convicted under the intentional or wanton or reckless theory of assault, we must decide whether both of these offenses constitute a "crime of violence" under either subsections (a) or (b) of § 16. If either theory does not meet the statutory definition under § 16(a) or § 16(b), then Blake's conviction under section 13D cannot qualify as a crime of violence. *See Dickson,* 346 F.3d at 52 (finding no crime of violence under § 16 where the offense "neither has as an element the use of force nor categorically involves a substantial risk that force may be used"). The government urges a correlation of these two theories of assault and battery under Massachusetts law with the two prongs of 18 U.S.C. § 16, arguing that the intentional theory of assault constitutes a crime of violence under § 16(a), and the wanton or reckless theory of assault constitutes a crime of violence under § 16(b). We agree.

### A. Analysis Under § 16(a)

As discussed above, a conviction for assault and battery under the intentional theory requires the Commonwealth to prove "the intentional and unjustified use of force upon the person of another, how-

---

4. Again, we note that *Moore* is not a decision of Massachusetts' highest court, but in the absence of any authoritative construction of section 13D by the Massachusetts Supreme Judicial Court, we apply the law of the state's intermediate appellate court. *See supra* note 3.

ever slight." *Commonwealth v. Burno*, 396 Mass. 622, 487 N.E.2d 1366, 1368–69 (1986) (internal quotation marks omitted). It is plain that, under the intentional theory, the elements of an assault and battery on a police officer under section 13D include "the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 16(a), to wit, a police officer engaged in the performance of his or her duties at the time. Under the intentional theory, one must employ "intentional and unjustified use of force" to be convicted. Clearly this constitutes "the use . . . of physical force" within the meaning of § 16(a).

### B. Analysis Under § 16(b)

Under Section 16(b), a crime of violence is any offense not covered by Section 16(a) "that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Blake first argues that assault and battery on a police officer is not a felony, but a misdemeanor under Massachusetts law. Regardless of how Massachusetts law defines it, we are obligated to apply the federal-law definition of a felony. *Cf. United States v. Campbell*, 167 F.3d 94, 97 (2d Cir.1999) (observing that "[t]he immigration laws contain no provision . . . indicat[ing] that they are to be interpreted in accordance with state law," and holding that whether a person has been convicted of an aggravated felony within the language of 8 U.S.C. § 1326(b)(2) "is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State" (internal quotation marks omitted)). An offense is classified by federal law as a felony if "the maximum term of imprisonment authorized" is more than one year. 18 U.S.C. § 3559(a). The

statute under which Blake was convicted of assault and battery clearly states that "[w]hoever commits assault and battery upon a police officer . . . shall be punished by imprisonment for not less than ninety days nor more than two and one-half years in a house of correction or by a fine of not less than five hundred nor more than five thousand dollars." Mass. Gen. Laws ch. 265, § 13D. The maximum sentence allowable—two and one-half years—is more than the one-year maximum required by the federal statute, and thus assault and battery on a police officer qualifies as a felony under federal law.

The crime of assault and battery on a police officer must "by its nature, involve[ ] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" in order to constitute a crime of violence under 18 U.S.C. § 16(b). Blake appears to construe this provision to require that there be some actual violence or injury done to the police officer in order to sustain a conviction. Without citation to any Massachusetts case law, he contends that because a conviction under section 13D "can be had on a showing of offensive touching where there is neither violence nor injury to the public official or police officer," the statute falls outside the scope of § 16(b).

Blake's argument fails first as a matter of Massachusetts law, which makes clear that both violence and injury are required to obtain a conviction on the wanton or reckless theory of assault. *Correia* states that an assault under this theory requires "the intentional commission of a wanton or reckless act (something more than gross negligence) *causing physical or bodily injury to another*." *Correia*, 737 N.E.2d at 1266 (emphasis added) (internal quotation marks omitted). That decision further explains that a reckless or wanton assault

requires "demonstrable physical injury," and that "until the unintended touch of a wilful, wanton and reckless actor causes injury, it is not cloaked with the criminal liability which attends the touch of one who intends the offensive contact." *Id.* at 1267 n. 5 (internal quotation marks omitted).

Further, with respect to the federal statute at issue, the government rightly counters Blake's argument that the inquiry under § 16(b) is not, as Blake proposes, whether some iteration of the offense might occur without the use of force. Rather, the critical question under the categorical approach is "whether, inherent in any commission of the felony is a 'substantial risk' that the perpetrator 'may' use such force." *Vargas–Sarmiento,* 448 F.3d at 169. For the crime of assault and battery on a police officer, we are guided by this Court's decision in *Canada,* which considered the Connecticut statute governing that offense.[5] As the Court noted in that case, "[t]o be convicted of assaulting a police officer under CGS § 53a–167c(a)(1), the offender must injure an officer while *intentionally* preventing the officer from performing his or her official duties. What this means in real terms is, among other things, preventing law enforcement officers from apprehending and arresting suspected criminals, carrying out lawful searches and seizures, intervening in personal disputes, and other duties that routinely involve physical intervention by police officers." *Canada,* 448 F.3d at 568. Accordingly, the Court determined that assault and battery on a police officer "inescapably involves a 'substantial risk that physical force … may be used,' " *id.* (quoting 18 U.S.C. § 16(b)), and was therefore a crime of violence.

There is no material difference between the elements of the crime under Connecticut and Massachusetts law that would require us to evade such an "inescapabl[e]" inference. Nor does the fact that the theory of assault we are considering requires wanton or reckless conduct necessitate a different result.[6] Assault and battery on this theory, under Massachusetts law, requires the specific knowledge both that the victim is a police officer and that the victim is in the process of carrying out his or her official duties. *See Correia,* 737 N.E.2d at 1265 & n. 2, 1266. This offense thus poses the same risks, and comprises the same knowing interference with a police officer's carrying out his or her duties, as the of-

---

5. Connecticut General Statutes section 53a–167c(a)(1) provides in pertinent part: "A person is guilty of assault of [a] public safety [officer] … when, with intent to prevent a reasonably identifiable … officer … from performing his or her duties, and while such … officer is acting in the performance of his or her duties, (1) such person causes physical injury to such … officer."

6. The government correctly notes with respect to the Massachusetts assault and battery statute that, "under the wanton or reckless theory, the perpetrator intends *the conduct,* and … recklessness is the *mens rea* with respect to the likelihood of physical harm." *See also United States v. Hernandez–Castellanos,* 287 F.3d 876, 881 (9th Cir.2002) (holding that "[f]or a crime based on recklessness to be a crime of violence under § 16(b), the crime must require recklessness as to, or conscious disregard of, a risk that physical force will be used against another, not merely the risk that another might be injured"). Because we need only consider "whether, inherent in any commission of the felony is a 'substantial risk' that the perpetrator 'may' use such force," *Vargas–Sarmiento,* 448 F.3d at 169; *see also Jobson v. Ashcroft,* 326 F.3d 367, 373 (2d Cir.2003) ("The risk of serious physical injury concerns the likely effect of the defendant's conduct, but the risk in section 16(b) concerns the defendant's likely use of violent force as a means to an end."), the recklessness at issue in the wanton or reckless theory of assault and battery on a police officer is not determinative of our § 16(b) analysis.

fense considered in *Canada*. Likewise, in *Sutherland*, we considered whether the crime of indecent nonconsensual touching of a person over the age of 14 under Massachusetts law constituted a crime of violence under § 16(b). We held that it did, and found that "any and all convictions" under the statute at issue there "would, by their nature, necessarily involve a substantial risk that physical force may be used." *Sutherland*, 228 F.3d at 175. The same can be said of the nonconsensual touching of a police officer. The wanton or reckless theory of assault and battery requires *intentional* conduct that is wanton and reckless, and that results in *demonstrable injury*. Such an action—particularly when oriented towards a police officer acting in the course of his or her duties, and who is likely to make a forceful response—necessarily involves a substantial risk that force may be used by the defendant.

Both the IJ and BIA cited the First Circuit's decision in *Santos* in determining that section 13D constitutes a crime of violence.[7] In *Santos*, the First Circuit ruled that a Massachusetts conviction for assault and battery on a police officer—the same crime of which Blake was convicted—was a crime of violence within the meaning of United States Sentencing Guidelines section 4B1.1, the career offender guideline. The court ruled that it was because "the crime carries a particularly high risk of physical injury and violence." *Santos*, 363 F.3d at 23; *see also United States v. Fernandez*, 121 F.3d 777, 780 (1st Cir.1997) ("It would seem self-evident that assault and battery upon a police officer usually involves force against another, and so meets that standard. At a

minimum, assault and battery upon a police officer requires purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties.").

This Court, however, has declined to analogize the Sentencing Guideline's definition of crime of violence to 18 U.S.C. § 16's definition of crime of violence, making *Santos* inapposite to the case at bar. "Crime of violence" under the Sentencing Guidelines is defined in pertinent part as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that ... involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). We have refused to conflate the Sentencing Guidelines' requirement of a "risk of *injury* to another" with § 16's requirement of a "risk of physical *force*," recognizing "the logical fallacy inherent in reasoning that simply because all conduct involving a risk of the use of physical force also involves a risk of injury then the converse must also be true." *Dalton*, 257 F.3d at 207.

This difference does not in the end require a different result from the one the First Circuit reached in *Santos*. Rather, based on this Circuit's precedent, we hold that assault and battery on a police officer—on either the intentional or wanton and reckless theory—is a crime of violence within the meaning of 18 U.S.C. § 16 and, accordingly, an aggravated felony within the meaning of the INA. We must therefore dismiss Blake's petition for review because we lack jurisdiction. *See Canada*, 448 F.3d at 564. Accordingly, we do not

---

**7.** Additionally, Blake cites dicta in *Santos* stating that "neither violence, nor the use of force, is an essential element of the crime as statutorily defined." *Santos*, 363 F.3d at 23. However, we note that the First Circuit went on to hold that, regardless of the statutory language, "violence, the use of force, and a serious risk of physical harm are all likely to accompany an assault and battery upon a police officer." *Id.*

reach his arguments concerning the IJ's denial of his request for a continuance.

## CONCLUSION

Because Blake was convicted of assault and battery on a police officer under Massachusetts General Laws chapter 265, section 13D, which constitutes a crime of violence under 18 U.S.C. § 16, we hold that the BIA correctly deemed Blake an aggravated felon subject to removal, pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). Because we lack jurisdiction to review any further the order of removal, Blake's petition for review is DISMISSED.