John P. DICKSON, Petitioner,

v.

John ASHCROFT, Attorney General of
the United States of America,
Respondent.

No. 02–4102.

United States Court of Appeals,
Second Circuit.

Argued: May 15, 2003.

Decided: Sept. 9, 2003.

**46**

George A. Terezakis, Mineola, NY, for Petitioner.

Rebecca C. Martin, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, Kathy S. Marks, Gideon A. Schor, of counsel), New York, NY, for Respondent.

Terry A. Maroney, Wilmer, Cutler & Pickering, New York, NY (Paul A. Engelmayer, Anjan Sahni, Wilmer, Cutler & Pickering, New York, NY; Jonathan E. Gradess, Manuel D. Vargas, New York State Defenders Association, New York, NY; Joshua L. Dratel, National Association of Criminal Defense Lawyers and New York State Association of Criminal Defense Lawyers, New York, NY, on the brief) for amici curiae New York State Defenders Association, New York State Association of Criminal Defense Lawyers, and National Association of Criminal Defense Lawyers.

Before: McLAUGHLIN, LEVAL, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Petitioner John Dickson petitions for review of the decision of the Board of Immigration Appeals ("BIA") ordering him removed for having been convicted of an aggravated felony. Under the categorical approach to criminal statutory interpretation, we hold that the state-law crime of unlawful imprisonment in the first degree is divisible into crimes that are categorically grounds for removal and others that are not. Accordingly, the BIA was permitted to consult the record of conviction to determine the specific crime for which Dickson was convicted. In assessing whether Dickson's conviction was for a removable offense, however, the BIA improperly relied upon the narrative statement of facts contained in the pre-sentence report that was prepared for Dickson's criminal proceedings. We accordingly grant Dickson's petition for review, vacate the BIA's decision, and remand to the BIA with directions to order a new removal hearing.

## BACKGROUND

### I. Factual Background

Petitioner John Dickson is a native and citizen of Jamaica. He entered the United States in 1986, at the age of six, on a nonimmigrant visitor's visa. In 1998, Dickson adjusted his status to lawful permanent resident. His wife and infant son are both citizens of the United States.

In August 2000, Dickson was arrested on the basis of a complaint by his then-girlfriend (who is now his wife). In December 2000, Dickson pled guilty to unlawful imprisonment in the first degree, pursuant to N.Y. Penal Law § 135.10 (McKinney 2003) ("NYPL § 135.10"). He was sentenced in February 2001 to a prison term of one to three years.

In May 2001, during Dickson's incarceration, the Immigration and Naturalization

Service ("INS") served Dickson with a Notice to Appear, charging that he was removable pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1227(a)(2)(A)(iii)) as an alien convicted of an aggravated felony. During removal proceedings before the Immigration Judge ("IJ"), the INS attorney attached to her memorandum of law the pre-sentence report ("PSR") that had been prepared for Dickson's state criminal proceedings. The IJ referred to facts contained in the PSR during the removal proceedings and ultimately decided that Dickson's conviction for unlawful imprisonment constituted an aggravated felony. The IJ found that Dickson was not eligible for any form of relief from removal, and ordered him removed to Jamaica.

Dickson appealed the IJ's decision to the BIA. Dickson asserted, *inter alia*, that unlawful imprisonment is not an aggravated felony, and that the PSR was inadmissible in the removal proceedings and should not have been considered by the IJ. The BIA rejected Dickson's arguments, affirmed the decision of the IJ, and dismissed Dickson's appeal. Dickson petitions this Court for review of the BIA's decision.

## II. Statutory Background

INA § 237(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Among the criminal convictions that fall within the INA's definition of an aggravated felony is a conviction for "a crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(F) (codified at 8 U.S.C. § 1101(a)(43)(F)). A "crime of violence" is in turn defined in the federal criminal code as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The New York state criminal code provides that "[a] person is guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury." NYPL § 135.10. The word "restrain" is further defined as follows:

> "Restrain" means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception, or (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the [custodial parent or institution] has not acquiesced in the movement or confinement.

N.Y. Penal Law § 135.00(1) (McKinney 2003) ("NYPL § 135.00(1)").

## DISCUSSION

### I. Jurisdiction and Standard of Review

■ INA § 242(a)(2)(C) (codified at 8 U.S.C. § 1252(a)(2)(C)) precludes review of "any final order of removal against an

alien who is removable by reason of," *inter alia*, having been convicted of an aggravated felony. We do have jurisdiction, however, to determine whether this jurisdictional bar applies. *See Dalton v. Ashcroft,* 257 F.3d 200, 203 (2d Cir.2001); *Bell v. Reno,* 218 F.3d 86, 89 (2d Cir.2000). We may thus review the BIA's legal finding that Dickson was convicted of an aggravated felony. *See Dalton,* 257 F.3d at 203; *Bell,* 218 F.3d at 89.

 The BIA's interpretation of ambiguous provisions in the INA, a statute it is charged with administering, must be granted substantial deference unless "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Mardones v. McElroy,* 197 F.3d 619, 624 (2d Cir.1999). We review *de novo,* however, the BIA's interpretation of state or federal criminal statutes. *Dalton,* 257 F.3d at 203. Because the INA defines aggravated felony with reference to "crimes of violence" as defined in the federal criminal code, *see* 18 U.S.C. § 16, and because this case also involves interpretation of the state crime of unlawful imprisonment, we review *de novo* the question whether NYPL § 135.10 is a crime of violence. *See Dalton,* 257 F.3d at 203.

## II. Whether Unlawful Imprisonment is a Crime of Violence Pursuant to 18 U.S.C. § 16

As noted above, § 16 requires consideration of whether an offense either has as an element the use or threatened use of physical force, or "by its nature" involves a substantial risk of the use of physical force. We have held that in determining whether an offense is a crime of violence under § 16, a "categorical approach" to criminal statutory interpretation must be applied. *Dalton,* 257 F.3d at 204–05. In describing the categorical approach, we have held that every set of facts violating a statute must satisfy the criteria for removability in order for a crime to amount to a removable offense; the BIA may not justify removal based on the particular set of facts underlying an alien's criminal conviction. *See Sui v. INS,* 250 F.3d 105, 116–18 (2d Cir.2001); *see also Dalton,* 257 F.3d at 204. The categorical approach focuses on "the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Id.* at 204 ("[T]he singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]" (quoting *Michel v. INS,* 206 F.3d 253, 270 (2d Cir.2000) (Calabresi, J., dissenting)) (internal quotation marks omitted)).

Where, however, a criminal statute encompasses diverse classes of criminal acts—some of which would categorically be grounds for removal and others of which would not—we have held that such statutes can be considered "divisible" statutes. *See Kuhali v. Reno,* 266 F.3d 93, 106 (2d Cir.2001) (holding that a federal statute prohibiting the export of certain classes of firearms and ammunition was divisible, because violation of the statute with regard to firearms would be a removable offense, while violation of the statute with regard to ammunition might not be); *Sui,* 250 F.3d at 118 (holding that a statute that prohibited "mak[ing], utter[ing] or possess[ing] a counterfeited security" was divisible, because the determination of whether an alien was removable could vary "depending on whether he or she had been convicted alternatively of making, possessing, or uttering counterfeit securities").

 In reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of convic-

tion for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal. *See Kuhali,* 266 F.3d at 106–07 ("[W]hen a criminal statute is 'divisible' into multiple categories of offense conduct—some but not all of which constitute removable offenses—a court may refer to the record of conviction, particularly the judgment of conviction, to determine whether the alien's criminal conviction falls within a category that would justify removal.").

 In the instant case, Dickson was convicted in state court of unlawful imprisonment in the first degree. The crime of unlawful imprisonment is accomplished when a defendant (1) restrains a victim by (2) intentionally and (3) unlawfully (4) moving or confining the victim in a way that interferes substantially with the victim's liberty, (5) without the victim's consent, (6) with knowledge that the act is unlawful, and (7) under circumstances that expose the victim to a risk of serious physical injury. NYPL §§ 135.10, 135.00(1). Whether the elements of NYPL § 135.10 are met will depend on the identity of the victim in each case. If the victim is a competent adult, consent to the restraint will preclude application of the statute. *See* NYPL § 135.00(1)(a). If the victim is an incompetent person or a child under sixteen, however, the victim's acquiescence to the restraint will not preclude application of the statute unless the victim's parent or guardian has also acquiesced. *See* NYPL § 135.00(1)(b).

## A. The Unlawful Imprisonment of a Competent Adult

 The unlawful imprisonment of a competent adult will always satisfy the requirements of § 16. For the nonconsent element of unlawful imprisonment to be met when the victim is a competent adult, the restraint must be accomplished by "physical force, intimidation, or deception." NYPL § 135.00(1)(a). Where restraint occurs by physical force, the use of force is (obviously) always present, satisfying § 16(a). Likewise, where restraint occurs by intimidation, the threatened use of physical force is always present, again satisfying § 16(a).

The question whether restraint accomplished by deception satisfies the requirements of § 16 requires somewhat greater analysis. Dickson argues that where restraint occurs by deception, there is not necessarily the use, threatened use, or risk of physical force, and so § 16 is not satisfied. Dickson poses a number of hypothetical situations that he claims would satisfy the elements of unlawful imprisonment but that would not involve the use or risk of physical force. We disagree with Dickson's position, and note that the hypothetical scenarios Dickson describes suffer from one of two flaws: they either rely on an artificially constrained definition of physical force, or pose situations that would not satisfy the elements of unlawful imprisonment.

At oral argument, Dickson posed a hypothetical situation in which a defendant lures a victim to enter a room voluntarily, and then locks the door, leaving the victim imprisoned. Dickson argued that such an act would be unlawful imprisonment by deception, but would not involve the use or risk of force. We cannot agree that such an act does not involve confining the victim by force—even though there has been no application of violent force, the defendant has unquestionably, by locking the door, imposed physical barriers of forcible restraint. Dickson's arguments to the contrary rely on the notion that physical force is present only when a victim is subjected to violent or assaultive force. This definition of physical force is artificially nar-

row—we have previously noted that "force" is defined more broadly as "power, violence, or pressure directed against a person or thing." *Chrzanoski v. Ashcroft,* 327 F.3d 188, 192 (2d Cir.2003) (quoting Black's Law Dictionary 656 (7th ed.1999)) (internal quotation marks omitted).

Contrary to Dickson's assertion, nothing in our prior cases holding that in order for § 16 to be satisfied an offense must be intentional rather than merely reckless suggests otherwise. Dickson argues that our holding in *Dalton* supports his understanding of the circumstances in which the use or risk of force is present. In *Dalton,* we held that a violation of New York's drunk driving statute did not satisfy the requirements of § 16(b), because the statute prohibited acts that did not necessarily involve the use or risk of force. *Dalton,* 257 F.3d at 206. We explained:

> The physical force [requirement of § 16(b)] . . . cannot reasonably be interpreted as a foot on the accelerator or a hand on the steering wheel. Otherwise, all driving would, by definition, involve the use of force, and it is hard to believe that Congress intended for all felonies that involve driving to be "crimes of violence."
>
> . . . .
>
> [T]he word "use" as well as the phrase "in the course of committing the offense" suggest[s] that § 16(b) contemplates only intentional conduct and "refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force . . . ."

*Id.* at 206–08 (quoting *United States v. Chapa–Garza,* 243 F.3d 921, 926 (5th Cir. 2001)).

*Dalton* does not require, as Dickson suggests, that the risk of force specified in § 16(b) be *violent* force applied directly to the person of the victim; rather, *Dalton*

holds only that the requirements of § 16(b) are not met where the crime could be committed without the *intentional* use of physical force. *Dalton,* 257 F.3d at 207–08; *see also Jobson v. Ashcroft,* 326 F.3d 367, 374 (2d Cir.2003) (following *Dalton* to hold that New York's second-degree manslaughter statute, which applies when a person recklessly causes death, did not meet the requirements of § 16(b) because many ways of recklessly causing death involve no "*intentional* use" of force).

Dickson's other hypothetical scenarios fail to prove that unlawful imprisonment by deception can be accomplished without the use or risk of force because they do not satisfy the elements of unlawful imprisonment. Dickson argues in his brief that the following scenario would constitute unlawful imprisonment of a competent adult by deception, but would not involve the use or risk of force:

> Assume a young woman who had been drinking, and who is highly intoxicated, wishes to speak to her former boyfriend, in the hope she will be able to convince him to reconcile with her. She offers to drive him home from work. He enters her car believing she will drive him home. Instead, she deceives him, driving to a lot where she parks. After realizing she is not going to take him home, he exits the vehicle. The young woman has committed the offense of unlawful imprisonment by deception.

Petitioner's Reply Brief at 10.

We first note that it is not at all clear that such a situation would constitute unlawful imprisonment in the first degree. As discussed above, the elements of unlawful imprisonment in the first degree always include not only intent on the part of the defendant but also substantial interference with the victim's liberty and that the victim be at risk of serious physical injury.

*See* NYPL §§ 135.10, 135.00(1). Here it is questionable both whether the defendant would have the requisite intent and whether the victim's liberty would be substantially interfered with; and Dickson has pointed to no New York cases involving a similar or even comparable fact pattern in which a conviction for unlawful imprisonment in the first degree has been obtained.

More fundamentally, Dickson's exercise in posing hypothetical scenarios purporting to show that an actor could be guilty of unlawfully imprisoning a competent adult without violating § 16 is useful only to a point. Even assuming that such a scenario would fulfill all the elements of the unlawful imprisonment statute (and assuming that we agree with Dickson that the actions would not involve the *use of force* ), Dickson's argument would fail because we easily conclude that the offense would be one that "by its nature" involves a *substantial risk that force may be used,* and thus satisfies the requirements of § 16(b). Dickson suggests that were we to agree that even one such implausible but not, perhaps, impossible scenario could exist, we would be compelled to conclude under the categorical approach that unlawful imprisonment is not a crime of violence as defined in § 16. This assertion ignores both the plain language of § 16(b) and our prior case law interpreting that section.

Section § 16(b) defines as a crime of violence "any ... offense that is a felony and that, *by its nature,* involves a *substantial risk* that physical force against the person or property of another *may be used* in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added). Positing a hypothetical manner in which the unlawful imprisonment of a competent adult could be accomplished by deception and without the use of force thus does not necessarily exclude the unlawful imprisonment statute from the scope of § 16—our

inquiry under § 16(b) is broader and more flexible, and involves asking whether the crime is one that *by its nature* involves a substantial *risk* that force *may* be used. *Cf. Sutherland v. Reno,* 228 F.3d 171, 175–76 (2d Cir.2000) (holding that a petitioner's conviction for indecent assault and battery under Massachusetts law constituted a crime of violence, because any offense under the state statute was by definition nonconsensual, and thus "any violation of [the statute], by its nature, presents a substantial risk that force *may* be used to overcome the victim's lack of consent and accomplish the indecent touching"). We hold that in any case in which a competent adult is restrained by deception, in a manner conforming to the elements of NYPL § 135.00, the offense will either involve the use of force to effectuate the restraint, or by its nature involve a substantial risk that force may be used. *Cf. Sutherland,* 228 F.3d at 175–76.

We thus conclude that whether accomplished by force, intimidation, or deception, the unlawful imprisonment of a competent adult under New York law always involves either the use or risk of force, and will always be a crime of violence pursuant to § 16.

## B. The Unlawful Imprisonment of an Incompetent Person or Child under Sixteen

█ The unlawful imprisonment of an incompetent person or a child under sixteen, on the other hand, could be accomplished without satisfying the requirements of § 16. For the nonconsent element of unlawful imprisonment to be met when the victim is an incompetent person or a child under sixteen, the restraint may be accomplished by "any means whatever, including acquiescence of the victim, if ... the [custodial parent or institution] has not acquiesced in

the movement or confinement." NYPL § 135.00(1)(b). New York courts have held that restraint of an incompetent person or child under sixteen may be accomplished even with the victim's acquiescence and without the use or risk of force. *See People v. Helbrans,* 228 A.D.2d 612, 617, 645 N.Y.S.2d 307 (2d Dep't 1996) (affirming a conviction for second-degree kidnapping and finding that the thirteen-year-old victim had been restrained within the meaning of NYPL § 135.00(1)(b), despite the victim's acquiescence to the restraint and the lack of use of force); *People v. De Vyver,* 89 A.D.2d 745, 747, 453 N.Y.S.2d 915 (3d Dep't 1982). Thus, unlawful imprisonment of an incompetent person or a child under sixteen is not a crime of violence under § 16, because it neither has as an element the use of force nor categorically involves a substantial risk that force may be used.

### C. The Unlawful Imprisonment Statute is Divisible

As our analysis above demonstrates, New York's unlawful imprisonment statute is divisible into two crimes: the unlawful imprisonment of a competent adult, which cannot be accomplished without use or threat of force, *see* NYPL §§ 135.10 & 135.00(1)(a); and the unlawful imprisonment of an incompetent person or child under sixteen, which can be accomplished without force, *see* NYPL §§ § 135.10 & 135.00(1)(b). We thus hold that the unlawful imprisonment of a competent adult is always a crime of violence pursuant to § 16, but that the unlawful imprisonment of an incompetent person or child under sixteen is not a crime of violence pursuant to § 16.

### III. The Proper Scope of Reference to the Record of Conviction

Because the unlawful imprisonment statute is divisible into removable and non-

removable offenses, the BIA was permitted to consult Dickson's record of conviction for the limited purpose of determining whether he was convicted of the unlawful imprisonment of a competent adult (a removable offense). *See Kuhali,* 266 F.3d at 106–07. In looking to the record of conviction for this purpose, the categorical approach permits inquiry into the *fact of conviction* of a specific offense but prohibits reference to or examination of the *particular factual circumstances* underlying that conviction. *See Jobson,* 326 F.3d at 372; *Kuhali,* 266 F.3d at 106–07; *Sui,* 250 F.3d at 117–18 & n. 11. This restriction derives from the language of the INA, which renders aliens deportable based on crimes for which they have been "convicted," not based on crimes they may have committed. INA § 237(a)(2)(A)(iii). The policy has also been held necessary to avoid arbitrary results and to comport with Congress' intent that IJs and the BIA not perform a fact-finding function in determining whether a particular criminal conviction is a removable offense. *See Sui,* 250 F.3d at 117–18; *accord In re Pichardo–Sufren,* 21 I. & N. Dec. 330, 334–36, 1996 WL 230227 (BIA 1996).

Here, the BIA properly determined that the unlawful imprisonment statute was divisible, and that it could look to the record of conviction to determine the crime for which Dickson was convicted: "Section 135:00 of the New York Penal [Code] is a divisible statute which has many parts.... [I]t is [thus] proper to look to the record of conviction, and to other documents admissible as evidence in proving a criminal conviction, to determine whether the specific offense of which the alien was convicted constitutes an aggravated felony ...." The BIA then held that Dickson's PSR was admissible in the proceedings to establish proof of his conviction, and noted

that "on review of the report, ... [Dickson] apparently forced the mother of his child to partake in a car ride against her will while bound." Based on this information, contained in the PSR's narrative statement of facts underlying Dickson's offense, the BIA concluded that Dickson had been convicted of a crime of violence.

 In the context of an IJ's or the BIA's inquiry regarding the crime for which an alien has been convicted, the "record of conviction" is statutorily defined as including, *inter alia,* the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript. *See* INA § 240(c)(3)(B) (codified at 8 U.S.C. § 1229a(c)(3)(B)); 8 C.F.R. § 1003.41(a). We have never had occasion to determine whether the PSR properly is considered part of the record of conviction for use in immigration proceedings.[1]

Respondent asserts that INA § 240(c)(3)(B)(vi), permitting the admission in immigration proceedings of "[a]ny document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction," specifically authorizes the BIA to rely on the PSR to determine the crime for which Dickson was convicted. However, we need not decide whether the PSR may be consulted to prove a conviction for immigration purposes, because we hold that even if it may, the BIA's reference to the narrative statement of facts contained in the PSR was impermissible.

Assuming *arguendo* that the PSR is a part of the record of conviction admissible in immigration proceedings, the BIA in the instant case did not rely on the PSR for its indication of the "existence of a conviction." [2] INA § 240(c)(3)(B)(vi). Rather, the IJ and BIA relied on the PSR for its narrative statement of the facts underlying Dickson's offense.[3] This was improper.

---

1. Respondent also relies in part on the Ninth Circuit's decision in *Abreu–Reyes v. INS,* 292 F.3d 1029 (9th Cir.2002), for the proposition that an IJ or the BIA properly may rely on facts contained in a PSR to determine an alien's removability. *See id.* at 1034 ("[A]dmitting the evidence of the amount of loss to the victim contained in the pre-sentence report [for the purpose of determining whether the alien had been convicted of an aggravated felony] was not fundamentally unfair, and the IJ properly relied on the pre-sentence report to determine Abreu–Reyes's removability."). However, the panel decision in *Abreu–Reyes* was published just four days after an *in banc* court of the Ninth Circuit reaffirmed that court's prior holding that "a presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition." *United States v. Corona–Sanchez,* 291 F.3d 1201, 1212 (9th Cir.2002) (*in banc* ) (citing *United States v. Franklin,* 235 F.3d 1165, 1172 (9th Cir.2000)). Thus, as another decision of the Ninth Circuit has recently explained, "there is noticeable tension in [the Ninth Circuit's] recent caselaw concerning whether the INS may ever rely on presentence reports to develop the factual basis of a convicted offense." *Chang v. INS,* 307 F.3d 1185, 1191 (9th Cir.2002) (citing *Abreu–Reyes* and *Corona–Sanchez,* but declining to reconcile the apparent tension between those decisions). To whatever extent *Abreu–Reyes* could be said to bear on our analysis in this case, then, we note that it is of questionable vitality in its own Circuit.

2. In its statement of the statutory provision under which Dickson's conviction was obtained, the PSR notes only that Dickson pled to "Unlawful Imprisonment 1st (E Fel.)," which clearly does not provide enough information on which the BIA could have relied to find that Dickson was convicted of the unlawful imprisonment of a competent adult.

3. The PSR is organized in such a way that the first page generally includes a number of boxes to be filled in by the preparing agency. These boxes include spaces to fill in such information as name, residence, criminal his-

The PSR is a tool used in aid of sentencing, and typically describes conduct that demonstrates the commission of an offense even if the alien was never *convicted* for that activity. New York law permits a PSR to include information and analysis of "the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, and the defendant's social history, employment history, family situation, economic status, education, and personal habits." N.Y.Crim. Proc. Law §§ 390.30(1), (3)(a) (McKinney 2003). Because the factual narratives contained in the PSR are prepared by a probation officer on the basis of interviews with prosecuting attorneys, police officers, law enforcement agents, etc., they may well be inaccurate. They may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial had the prosecution attempted to present them. *See Hili v. Sciarrotta*, 140 F.3d 210, 216 (2d Cir.1998) (noting that the inclusion of hearsay statements and inaccurate information in a PSR is "virtually inevitable"); *Dorman v. Higgins*, 821 F.2d 133, 138 (2d Cir.1987) (noting that verification of the information contained in a PSR is "desirable ... [but] not always possible")566. Such a narrative is not a highly reliable basis for a decision of such importance as deportation.

Moreover, there are many other documents that properly are considered part of the record of conviction, such as the judgment of conviction or the plea colloquy transcript, that do not pose the potential reliability problems of a factual narrative in a PSR. In light of the ready availability of these other documents on which an IJ or the BIA could rely to ascertain the crime for which an alien was convicted, we

see no reason why the conviction record should be deemed to include inherently unreliable narratives based on hearsay, which may well be inaccurate.

We find ample support in our case law for this approach. In *Sui*, the defendant pled guilty to an indictment charging him with possession of counterfeit securities with the intent to deceive others. *Sui*, 250 F.3d at 108. The PSR prepared for Sui's sentencing indicated that Sui intended to use the counterfeit securities to purchase as much merchandise out of state as possible, and then to sell that merchandise in New York. *Id.* at 109. As a result of Sui's criminal conviction, the INS commenced removal proceedings, charging him with inadmissibility for having been convicted of an offense involving fraud in which the loss to the victim exceeded $10,000. *Id.* Although Sui's fraudulent conduct resulted in losses under $10,000, the IJ relied on the statement of Sui's intent contained in the PSR to hold that Sui attempted to defraud his victims of an amount greater than $10,000 and was, thus, removable. *Id.* at 110. We vacated the order of removal, holding that it was error for the IJ to have "go[ne] behind the offense as it was charged to reach [its] own determination as to whether the underlying facts amount[ed] to ·one of the enumerated crimes." *Id.* at 117–18 (quoting *Lewis v. INS*, 194 F.3d 539, 543 (4th Cir.1999)). We explained that Congress did not intend for IJs or the BIA to perform a "factfinding role ... in ascertaining whether an alien had committed an aggravated felony." *Id.* at 117.

 Because the PSR prepared for Dickson's state trial proceedings does not

tory, and current conviction. Following this page, the preparing agency attaches a narrative description of the facts underlying the offense for which the PSR was prepared, an analysis of the defendant's criminal history, and a discussion and analysis of the defendant's social history (including family, education, and health background).

identify the branch of the statute under which he was convicted with sufficient specificity for the BIA to have found him removable under § 16 and INA § 237(a)(2)(A)(iii), we make no suggestion as to what our ruling would be in a case in which the BIA relied not on the PSR's narrative statement of the facts constituting the offense, but on its identification of the particular branch of the statute under which the conviction was obtained. We thus need not and do not decide whether the PSR may, under some circumstances, properly be considered by the BIA in determining whether an alien has been convicted of a removable offense. We hold only that the BIA may not rely on factual narratives in a PSR to determine the crime for which an alien has been convicted.

## IV. Reconsideration on Remand

In granting Dickson's petition and vacating the BIA's order of removal, we remand for the purpose of allowing an IJ to make the legal determination in the first instance whether documents that are properly considered part of the record of conviction establish that Dickson is removable. *Cf. Arango–Aradondo v. INS,* 13 F.3d 610, 614 (2d Cir.1994) (remanding to the BIA for consideration in the first instance of an alien's ineffective assistance of counsel claim); *Esposito v. INS,* 987 F.2d 108, 112 (2d Cir.1993) (remanding to the BIA for consideration of legal issues not previously considered). On remand, respondent may present appropriate documents showing the offense for which Dickson was convicted, such as the indictment and plea allocution transcript, to establish that Dickson is removable for having violated NYPL § 135.10(1)(a).

### CONCLUSION

For the reasons stated above, we GRANT Dickson's petition for review, VA-CATE the BIA's order of removal, and REMAND to the BIA with directions to order a new removal hearing.