10-4687-ag
Morris v. Holder

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2011

(Submitted: September 26, 2011         Decided: April 23, 2012)

No. 10-4687-ag

———————————————————

CONNELL STANLEY MORRIS,
*Petitioner*,

-v.-

ERIC H. HOLDER, JR.,
Attorney General of the United States,
*Respondent*.

———————————————————

Before:     WALKER, MCLAUGHLIN, and LIVINGSTON, *Circuit Judges*.

Petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming an order of an Immigration Judge finding petitioner Connell Stanley Morris removable on the basis of his second-degree assault conviction in violation of New York Penal Law § 120.05(2) and on the basis of petitioner's conviction of attempted criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law §§ 110 and 220.03. The BIA found Morris ineligible for cancellation of removal because his second-degree assault conviction constituted a "crime of violence" under 18 U.S.C. § 16(b) and therefore an "aggravated felony" for purposes of § 101(a)(43)(F) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(F). We hold that a conviction for second-degree assault under New York Penal Law § 120.05(2) categorically constitutes a "crime of violence" for the purposes of 18 U.S.C. § 16(b). We further conclude that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), did not overturn our precedent holding that the *Ex Post Facto* Clause of the United States Constitution, U.S. CONST. art. I, § 9, cl. 3, is not applicable in the deportation and removal context. We dismiss the petition for review.

ANNE E. DOEBLER, Buffalo, New York, *for Petitioner* (on submission).

KILEY L. KANE, Office of Immigration Litigation, United States Department of Justice, Washington, District of Columbia (Tony West, Assistant Attorney General, Civil Division, and John S. Hogan, Senior Litigation Counsel, Office of Immigration Litigation, *on the brief*) *for Respondent* (on submission).

LIVINGSTON, *Circuit Judge*:

This appeal requires us to determine whether a conviction for second-degree assault pursuant to New York Penal Law § 120.05(2) is a "crime of violence" under 18 U.S.C. § 16(b) and therefore an "aggravated felony" for purposes of § 101(a)(43)(F) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(F). We are also asked to determine whether the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), overturned the "long and constant line of precedent establish[ing] that statutes retroactively setting criteria for deportation do not violate the *ex post facto* clause" of the United States Constitution because "[d]eportation is a civil, not a criminal, proceeding." *Kuhali v. Reno*, 266 F.3d 93, 111-12 (2d Cir. 2001).

Petitioner Connell Stanley Morris, a native and citizen of Saint Vincent and the Grenadines admitted to the United States as a lawful permanent

2

resident, was convicted of assault in the second degree pursuant to New York

Penal Law § 120.05(2) and of attempted criminal possession of a controlled

substance in the seventh degree in violation of New York Penal Law §§ 110 and

220.03. By order of October 19, 2010, and based on Morris's assault conviction,

the Board of Immigration Appeals ("BIA") upheld the November 20, 2009 oral

decision of the Immigration Judge ("IJ") ordering Morris removed from the

United States as an alien convicted of an "aggravated felony."

Morris raises two arguments in his petition. First, he contends that the

BIA erred in holding that his New York State conviction for second-degree

assault constitutes a "crime of violence" pursuant to 18 U.S.C. § 16(b) and is

therefore an "aggravated felony" as defined in § 101(a)(43)(F) of the INA.[1]

Second, Morris contends that *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010),

overturns the substantial body of precedent holding that deportation and removal

proceedings are civil in nature and thus do not implicate the *Ex Post Facto*

---

[1] A "crime of violence" is defined in 18 U.S.C. § 16 as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 101(a)(43)(F) of the INA provides, in turn, that "a crime of violence (as defined in section 16 of title 18 . . . ) for which the term of imprisonment [is] at least one year" is an "aggravated felony." 8 U.S.C. § 1101(a)(43)(F).

Clause.  As a result, he argues that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, 110 Stat. 3009-546, which expanded the INA's definition of "aggravated felony" to include "a crime of violence" (as defined in 8 U.S.C. § 16) that results in a prison sentence of one year or more, *see* 8 U.S.C. § 1101(a)(43)(F) (as added by IIRIRA § 321, 110 Stat. at 3009-627), should not apply retroactively to his 1993 assault conviction.

For the reasons stated below, we reject each of these contentions.  We conclude that second-degree assault under New York Penal Law § 120.05(2) does constitute a "crime of violence" within the meaning of 18 U.S.C. § 16(b) and an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F).  We further conclude that the decision in *Padilla* does not alter longstanding precedent holding that deportation is a civil proceeding and that, as a result, statutes retroactively setting criteria for deportation do not implicate the *Ex Post Facto* Clause.

With these questions decided, we lack jurisdiction to further review the order of removal in this case.  Accordingly, we dismiss Morris's petition for review.

## BACKGROUND

Morris, a native and citizen of Saint Vincent and the Grenadines, was admitted to the United States as a lawful permanent resident on August 17,

4

1980.  On July 9, 1993, Morris pleaded guilty in New York State to a charge of assault in the second degree in violation of New York Penal Law § 120.05(2); he was sentenced to five years' probation on August 23, 1993.  Morris was found to be in violation of his probation on August 25, 1994, and was resentenced to a term of one year of imprisonment on September 14, 1994.

On September 20, 2001, Morris pleaded guilty for a second time in New York State, this time to the offense of attempted criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law §§ 110 and 220.03.  Morris was sentenced to one year of probation for this offense.

On July 30, 2008, the Department of Homeland Security ("DHS") instituted removal proceedings against Morris on the ground that his 1993 New York State conviction for second-degree assault rendered him an aggravated felon, and on the additional ground that he had been convicted of a controlled substance violation.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i).  At a hearing before an IJ on November 20, 2009, Morris, who was represented by counsel, admitted his second-degree assault conviction but challenged removability on the basis that his conviction for second-degree assault should not be considered a "crime of violence" within the meaning of 18 U.S.C. § 16(b).  Morris further contended that he was entitled to a waiver of inadmissability under INA § 212(c), 8 U.S.C. § 1182(c), and that in addition to a § 212(c) waiver or in the alternative, he was

entitled to cancellation of removal pursuant to 8 U.S.C. § 1229b(a).

By oral decision of November 20, 2009, the IJ rejected these challenges as without merit and ordered Morris removed to Saint Vincent and the Grenadines. The IJ found that Morris's assault conviction qualified as an "aggravated felony" for purposes of § 101(a)(43)(F) of the INA because second-degree assault is a "crime of violence" as defined in 18 U.S.C. § 16(b). The IJ also concluded that Morris's conviction for attempted possession constituted a controlled substance violation under 8 U.S.C. § 1227(a)(2)(B)(i).

With respect to Morris's petition for a § 212(c) waiver, the IJ determined that Morris was not eligible for such a waiver and that, in any event, Morris could not obtain relief through simultaneous consideration of applications for cancellation of removal and § 212(c) relief. The IJ reasoned that regardless of the grant of a § 212(c) waiver, Morris was rendered ineligible for cancellation of removal due to his aggravated felony conviction.

Morris appealed to the BIA, which affirmed the IJ's decision on October 19, 2010. In reaching the conclusion that Morris's assault conviction constituted an aggravated felony, the BIA relied on our decision in *United States v. Walker*, 442 F.3d 787 (2d Cir. 2006), which held that a conviction for second-degree assault under New York Penal Law § 120.05(2) constituted a conviction for a violent felony for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §

924(e). The BIA also agreed with the IJ that Morris could not obtain relief from removal through simultaneous petitions for cancellation of removal and § 212(c) relief, given that his aggravated felony conviction rendered him ineligible for cancellation.

On November 17, 2010, Morris petitioned this Court for review of the BIA's decision. On appeal, Morris contends that the BIA and the IJ erred in classifying his second-degree assault conviction as a "crime of violence." He further contends that, even assuming *arguendo* that his conviction qualifies as a "crime of violence," IIRIRA's expanded definition of "aggravated felony" should not apply retroactively to his assault conviction. Although Morris acknowledges the longstanding precedent holding that the *Ex Post Facto* Clause is not implicated in deportation proceedings, he contends that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), overturned this precedent, and that therefore the *Ex Post Facto* Clause bars the retroactive application of IIRIRA to his assault conviction.[2]

## DISCUSSION

---

[2] Morris does not pursue the issue of his eligibility for a § 212(c) waiver in his petition to this Court. Nor does he challenge the determination of the IJ and the BIA that, assuming *arguendo* that his assault conviction qualifies as an aggravated felony, he is ineligible for cancellation of removal.

7

"Where, as here, the BIA adopts the decision of the IJ and merely supplements the IJ's . . . decision, we review the decision of the IJ as supplemented by the BIA." *Guamanrrigra v. Holder*, 670 F.3d 404, 409 (2d Cir. 2012) (internal quotation marks omitted).

## I.    Jurisdiction

We lack jurisdiction to review any final order of removal against an alien who is removable because he has committed an aggravated felony as defined in 8 U.S.C. § 1227(a)(2)(A)(iii). *See* 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction, however, to determine constitutional claims and questions of law that arise from BIA proceedings. *See* 8 U.S.C. § 1252(a)(2)(D). Whether an offense is an aggravated felony for purposes of the immigration laws is a question of law. *See Blake v. Gonzales*, 481 F.3d 152, 155-56 (2d Cir. 2007). We review this issue *de novo*. *Pierre v. Gonzales*, 502 F.3d 109, 113 (2d Cir. 2007). We likewise retain jurisdiction to consider Morris's constitutional claim.

At the outset, we reject the Respondent's contention that we must dismiss Morris's petition for lack of jurisdiction on the theory that regardless of whether Morris's assault conviction constitutes an "aggravated felony" (or, presumably, whether the Constitution permits the retroactive application of the current definition of "aggravated felony" to him) there is no dispute that Morris is removable on the basis of his controlled substance conviction. Even assuming

8

that Morris is removable on this basis alone, this conviction did not render him ineligible for cancellation of removal. *See* 8 U.S.C. §§ 1101(a)(43), 1229b(a)(3). The IJ concluded, and the BIA agreed, that Morris was ineligible for cancellation because it found that Morris's assault conviction constitutes an "aggravated felony." Although we lack jurisdiction to review a factual determination by the BIA that an alien is ineligible for cancellation of removal, *see Rosario v. Holder*, 627 F.3d 58, 64 (2d Cir. 2010), we retain jurisdiction to consider an alien's claim that he is eligible for such relief where that claim presents an issue of law, *see Wellington v. Holder*, 623 F.3d 115, 118 (2d Cir. 2010) (per curiam). Accordingly, we retain jurisdiction to consider the legal and constitutional claims asserted here.

## II.    Aggravated Felony

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Included within the definition of "aggravated felony" is "a crime of violence (as defined in section 16 of title 18 . . . ) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 sets forth two definitions of "crime of violence":

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The BIA determined that Morris's second-degree assault conviction qualified as a crime of violence under § 16(b). We agree.

We approach the question of whether an offense falls within § 16(b) categorically and "look to the generic elements of the statutory offense" rather than to "the factual circumstances surrounding any particular violation." *Jobson v. Ashcroft*, 326 F.3d 367, 371-72 (2d Cir. 2003); *see also Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) ("[O]nly the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant. . . ." (internal quotation marks omitted)).[3] "We have broadly defined 'physical force' for purposes of § 16 as 'power, violence, or pressure directed against a person or thing,'" and have rejected the argument that the "force referenced in § 16(b) must be '*violent* force applied directly to the person of the victim.'" *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 169 (2d Cir. 2006) (quoting *Dickson v. Ashcroft*, 346 F.3d 44, 50 (2d Cir. 2003)). In addition, "[f]or a particular felony, by its nature, to present a 'substantial risk' of the use of such physical force, a court need not conclude that commission of the crime requires the invariable application of such

---

[3] The parties agree that Morris was convicted of second-degree assault under New York Penal Law § 120.05(2).

force." *Id.* The "substantial risk" in § 16(b) "refers to intentional, rather than merely negligent or accidental, use of force." *Id.* at 169-70. But § 16 "defines as a crime of violence those felony offenses 'that naturally involve a person acting in disregard of the risk that physical force *might* be used against another in committing an offense.'" *Id.* at 169 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004)).

Morris was convicted under New York Penal Law § 120.05(2), which provides that a person is guilty of assault in the second degree when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." *Id.* Under the categorical approach, the generic elements of this offense are: (1) the specific intent to cause physical injury; (2) actually causing physical injury; and (3) doing so through the use of a deadly weapon or dangerous instrument.

We have previously observed that where an accused has an intent "to inflict serious physical injury--action likely to meet vigorous resistance from a victim-- we can confidently conclude that inherent in the nature of the crime is a substantial risk that the perpetrator may intentionally use physical force to achieve his criminal objective." *Vargas-Sarmiento*, 448 F.3d at 173 (emphases omitted); *see also id.* at 174 ("Where a person's specific intent is . . . to cause [the

11

victim] serious physical injury, there is necessarily a significant risk inherent in the nature of the crime that, if the perpetrator cannot initially achieve his objective without physical force, he may ultimately resort to force to do so."). The "nature of the objective," we have said, "and the possibility of discovery and resistance are enough to establish the requisite inherent risk that the perpetrator might intentionally use physical force." *Id.* at 173; *see also Jobson*, 326 F.3d at 373 (noting that burglary is a crime of violence "because a burglar of a dwelling *risks having to use force* if the occupants are home and hear the burglar" (internal quotation marks omitted)).

Given that New York Penal Law § 120.05(2) has as elements both the intent to cause physical injury and injury itself (and by means of a deadly weapon or dangerous instrument), it is not surprising that the reported cases relating to convictions pursuant to this provision involve the intentional use of physical force. *See, e.g.*, *People v. Blanche*, 90 N.Y.2d 821 (1997) (accused shot victim); *People v. McKoy*, 685 N.Y.S.2d 525 (4th Dep't 1999) (accused struck victim with a chair); *People v. Campos*, 614 N.Y.S.2d 604 (3d Dep't 1994) (accused injured victim with a knife); *People v. Miller*, 592 N.Y.S.2d 805 (3d Dep't 1993) (accused struck victim with a beer bottle). As we said in concluding that § 120.05(2) qualifies as a "violent felony" for the purpose of ACCA, § 120.05(2)'s requirement that the accused intentionally cause physical injury by means of a deadly weapon

or dangerous instrument necessarily involves the use of physical force "on any reasonable interpretation of that term." *United States v. Walker*, 442 F.3d 787, 788 (2d Cir. 2006) (per curiam); *see also United States v. Daye*, 571 F.3d 225, 234 n.9 (2d Cir. 2009) (finding this Court's analysis of § 16(b) to be "helpful" in determining whether an offense is a "violent felony" under ACCA).

Morris offers two arguments as to why his assault conviction is not a "crime of violence." First, Morris relies on our decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), to argue that a crime requiring the intent to cause injury need not require the use of physical force. *Chrzanoski* is inapposite, however, as it considered whether an offense was a "crime of violence" under § 16(a)--not § 16(b). *See id.* at 191. We have noted that § 16(b) "sweeps more broadly than § 16(a)" and that, unlike § 16(a), it does not require that an offense have as an element the use of physical force. *Vargas-Sarmiento*, 448 F.3d at 169 (internal quotation marks omitted). Rather, under § 16(b), we "focus on the nature of the felony at issue to determine if it inherently presents 'a substantial risk' that the perpetrator 'may' use physical force in the commission of the crime." *Id.* *Chrzanoski* is therefore inapplicable here.

Morris next argues that second-degree assault under New York Penal Law §120.05(2) is not a "crime of violence" under §16(b) because an individual can hypothetically commit that offense without any risk of the intentional use of

"physical force." In support of his argument, Morris posits that an individual who poisons his victim would be committing second-degree assault under New York Penal Law § 120.05(2) without employing "physical force." This argument is also unavailing.

We have held that "[w]hether a crime, by its nature, presents a 'substantial risk' that the perpetrator 'may' intentionally use physical force is not answered in the negative simply because 'cases can be imagined where a defendant's conduct does not create a genuine probability that force will be used.'" *Vargas-Sarmiento*, 448 F.3d at 174 (quoting *Chery v. Ashcroft*, 347 F.3d 404, 408 (2d Cir. 2003)); *see also Dickson*, 346 F.3d at 51 (noting that a defendant's "[p]ositing a hypothetical manner in which the [offense] could be accomplished" without the use of physical force "does not necessarily exclude" the offense from the ambit of § 16(b)). Moreover, we have already rejected the argument that the act of poisoning does not involve the use of physical force in the commission of the offense. *See Vargas-Sarmiento*, 448 F.3d at 174. To the contrary, "the physical force referenced in § 16(b) includes *any* 'power, violence, or pressure directed against a person or thing.'" *Id.* (quoting *Dickson*, 346 F.3d at 50) (emphasis added). Consequently, where an individual "poisons food that [he] intends [someone] to eat, . . . . [he] intentionally avails h[im]self of the physical force exerted by poison on a human body." *Id.* at 174-75.

We have considered Morris's remaining arguments as to why his New York State conviction for second-degree assault does not qualify as a crime of violence pursuant to 18 U.S.C. § 16(b) and have determined that they are without merit. Accordingly, we conclude that the BIA did not err in determining that a conviction for second-degree assault pursuant to New York Penal Law § 120.05(2) is a "crime of violence" under 18 U.S.C. § 16(b) and therefore an "aggravated felony" for purposes of § 101(a)(43)(F) of the INA.

## III.  *Ex Post Facto* **Clause**

Morris next argues that the retroactive application of IIRIRA's amendments to the INA's definition of "aggravated felony" in his deportation proceedings violated the *Ex Post Facto* Clause, U.S. CONST. art. I, § 9, cl. 3.  He acknowledges the long and unwavering line of authority to the contrary -- authority "establishing 'that statutes retroactively setting criteria for deportation do *not* violate the *ex post facto*' clause."  *Domond v. INS*, 244 F.3d 81, 87 (2d Cir. 2001) (quoting *United States v. Koziel*, 954 F.2d 831, 834 (2d Cir. 1992)) (emphasis added).  Morris contends that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), has overturned this authority.  For the following reasons, we disagree.

In *Padilla*, the Supreme Court held that a criminal defendant's counsel has an obligation under the Sixth Amendment to inform that defendant whether his

plea carries a risk of deportation. *See id.* at 1486. In so holding, the Supreme Court stated that, "as a matter of federal law, deportation is an integral part -- indeed, sometimes the most important part -- of the *penalty* that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 1480 (emphasis added and footnote omitted). The Supreme Court further noted that "deportation is . . . intimately related to the criminal process," that "[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century," and that it is "most difficult to divorce the penalty from the conviction in the deportation context." *Id.* at 1481 (internal quotation marks omitted).

We have yet to consider whether *Padilla* draws into question the many cases that have rejected the argument that statutes retroactively setting criteria for deportation raise *ex post facto* concerns. In *Alvarado-Fonseca v. Holder*, 631 F.3d 385 (7th Cir. 2011), however, the Seventh Circuit dismissed this argument, relying on the Supreme Court's statement in *Padilla* itself that "deportation 'is not, in a strict sense, a criminal sanction.'" *Id.* at 392 (quoting *Padilla*, 130 S. Ct. at 1481). The Seventh Circuit concluded that, "[i]n light of that statement," the court could not agree "that *Padilla* provides sufficient guidance to deviate from the long line [of] cases establishing that statutes retroactively setting criteria for deportation do not violate the *ex post facto* clause." *Id.*

We join the Seventh Circuit. Both this Circuit and, more importantly, the

Supreme Court, have long held that deportation and removal are civil proceedings. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) ("And whatever might have been said at an earlier date for applying the ex post facto [c]lause, it has been the unbroken rule of this Court that it has no application to deportation."); *United States v. Koziel*, 954 F.2d 831, 834-35 (2d Cir. 1992) (collecting cases and observing that "[a] long and unwavering line of authority has established that statutes retroactively setting criteria for deportation do not violate the *ex post facto* provision"). *Padilla* itself expressly affirms that "removal proceedings are civil in nature," and although "deportation is a particularly severe 'penalty,' . . . it is not, in a strict sense, a criminal sanction." *Padilla*, 130 S. Ct. at 1481. Given this language, we do not construe *Padilla* as overturning this Circuit's prior precedent that "statutes retroactively setting criteria for deportation do not violate the *ex post facto* clause." *Kuhali*, 266 F.3d at 111-12.

**CONCLUSION**

Morris's conviction for second-degree assault under New York Penal Law § 120.05(2) qualifies as a "crime of violence" for purposes of 18 U.S.C. § 16(b), and therefore is an "aggravated felony" under § 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F). Further, the Supreme Court's decision in *Padilla* did not overturn our precedent holding that deportation and removal proceedings are civil in nature and therefore that "statutes retroactively setting criteria for deportation do not violate the *ex post facto* clause." *Kuhali*, 266 F.3d at 111-12. We have considered all of Morris's remaining arguments and have rejected them as without merit. For the foregoing reasons, we **DISMISS** the petition for review of the BIA's removal order.